## WILLIAM LEWIS *et al.*

### *v.*

## GEORGE C. LANPHERE.

1. AMENDMENT *of bill in chancery.* Courts of chancery have never required an affidavit showing grounds for filing an amended bill, but, on the contrary, it is always allowed when the chancellor can see that the

complainant, by his evidence, has made a case requiring relief, but is variant from the bill.

2. When an amended bill is filed, it is not an abandonment of the original bill, and the complainant is not precluded from proving allegations in the original and not in the amended bill, nor is he restricted to the prayer of the latter.

3. CHANCERY PRACTICE—*continuance on amendment of bill.* In such a case, if the defendant has evidence to meet the case made by the complainant under his amended bill, and it is beyond his reach, and he has been guilty of no want of diligence, the chancellor, on a proper showing, should either continue the case or extend the time to procure the evidence.

4. CREDITOR'S BILL—*to subject to an execution at law.* Where a party files a bill to set aside a fraudulent conveyance of real estate, or to subject the same to the payment of an execution, it is true, he must show that he has exhausted his remedy at law, but this is done by showing that an execution has been issued and placed in the hands of an officer, and that the officer made a demand of the debtor for property or money to satisfy it, and that the debtor stated that he had neither, and thereupon the officer returned the execution *nulla bona.*

5. A judgment debtor fraudulently conveyed land to his son, to hinder and delay his creditors, and took a deed from his son reconveying the land to him, but did not put the last named deed on record. The judgment creditor, after levying his execution on the land, filed a bill in chancery, setting forth the facts, and asking that the land be subjected to sale to satisfy the execution: *Held,* that the facts brought the case within the jurisdiction of a court of equity, and that the complainant was entitled to the relief asked for.

6. CHANCERY—*relieves against every species of fraud.* Equity relieves against almost every species of fraud, and as it assumes almost every conceivable form, courts have never defined the limits to the relief that will be granted, or the precise character of fraud that falls within their jurisdiction; but any effort to obscure the title to real estate, or its conveyance, to defraud, hinder or delay creditors, clearly affords grounds for relief.

7. ESTOPPEL—*representation of execution debtor that he has no property.* Where an execution debtor informs the officer having the execution, that he has no property or money with which to pay it, and the officer thereupon returns the execution *nulla bona,* the debtor is estopped to deny the truth of such statement to the officer; and upon a bill filed against him to subject real estate alleged to have been fraudulently conveyed by him, to the payment of such execution debt, he will not be heard to say that he had property liable to execution at the time he stated to the officer that he had not, and thus defeat the bill.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. F. C. SMITH, for the appellants.

Mr. A. M. BROWN, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee recovered a judgment, before a justice of the peace, against William Lewis, on the 13th of October, 1873. He sued out an execution and placed it in the hands of a constable, who, after making a demand, returned the writ no property found. Appellee thereupon procured and filed a transcript of the justice's docket, in the circuit clerk's office. He sued out an execution and placed it in the hands of the sheriff, who levied it upon the land in controversy. He then filed this bill, alleging that Wm. Lewis had fraudulently conveyed this property to his son Hiram, to hinder, delay and prevent appellee from collecting his debt; that, as a part of the fraudulent scheme, Hiram Lewis then reconveyed the property to his father, who held the deed of conveyance, and fraudulently failed to place it on record.

Answers were filed, not under oath, denying all the material allegations of both the original and amended bills, and replications were filed. On the hearing, the court found for complainant, and decreed that the land was subject to the lien of the transcript and execution, and liable to be sold in satisfaction of the same, and defendants appeal.

A number of questions are raised and objections urged against the regularity of the proceedings in the court below. It is urged that the court below erred in the exercise of its discretion in allowing an amended bill to be filed without an affidavit showing grounds therefor. There is no force in this objection. The practice of our courts of chancery has never required it, but, on the contrary, it is always allowed, when the chancellor can see that the complainant, by his evidence,

has made a case requiring relief, but is variant from the bill. In such a case, the evidence shows all the grounds that are required. It is not the province of the court to obstruct or stifle justice, merely to build up a useless and expensive system of practice, augmenting costs, delaying justice and subserving no beneficial end. Where the evidence shows such a case, the defendant is usually apprised of the fact. and is not surprised by the amendment, as he may generally be, if he desires, fully prepared to meet it, if he has such evidence. But if he has such evidence, and it is beyond his reach, and he has not been guilty of a want of diligence, the chancellor, on a proper showing, would either continue the case or extend the time to procure the evidence. This was a matter of discretion in the court below, and we do not see that there was any abuse of it, to say nothing of its gross and oppressive exercise.

It is also insisted that the amended bill should be regarded as a substitute for the original, and that it abandoned the original bill, and that complainant should have been precluded from proving allegations in the original, and not in the amended bill, and that he should have been restricted to the prayer of the latter. The objection is a novel one, inasmuch as it is opposed to the uniform and most elementary rules of practice since courts of chancery were first organized. The objection is frivolous.

It is again urged, that a complainant, in a case of this character, must exhaust his remedy at law, before he can resort to equity for relief. There is no doubt of the correctness of the rule, but does it appear that he has not, in this case? Wm. Lewis, the debtor, when called on by the constable with the execution, denied having money or property to discharge or satisfy it. This, then, shows that he had neither money nor personal property at that time. Having made the statement, he will not be heard to say that it was untrue. He has no right to complain, if appellee gave him more credit for veracity than he deserved. If the declara-

tion was false, as it probably may have been, it was made with the expectation that it would be received as truth, and he expected it to be believed, and he has accomplished all that he expected when he made the statement. If he had money or property to pay the execution when he said he had not, the statement was not technically true, but it was simply false. Nor has he shown that he subsequently acquired the property it is now claimed he held. If he had such property, he, by false and fraudulent statements, preserved it from levy and sale, and carried out his fraudulent purpose of preserving the property; and having succeeded in that fraudulent scheme, he will not now be heard to prove the fraud and defeat this proceeding, which was doubtless induced by that statement. Had he then said, as is now urged, that he had an abundance of property, and had turned it out on the execution, does he, or any one else, suppose that this proceeding would have ever been instituted?

Does he hope to baffle justice by having the bill dismissed, and then, when property is demanded, to fall back and call witnesses to prove that his statements were, in fact, true? His statement fully justified the constable in returning the execution *nulla bona*, even if that question could be raised in this proceeding, which may be well doubted.

It is insisted that the sheriff should have demanded property before levying on this land, and the filing of the bill. Even if a demand was held to be necessary, the constable had made a demand but a few days previous, and it proved ineffectual, and we must presume that this was known to appellee. Again, if the debtor in execution had the personal property that is now claimed, and he wished to preserve this land from sale, as soon as the levy came to the knowledge of appellants, the one could have turned it out to the officer, or his failing to do so, the other could have pointed it out to the officer, and required him to make a levy on it.

The statute gives an election to the judgment creditor upon what property he will have his execution levied, except per-

sonal property, which shall be last taken. (R. S. 1874, sec. 11, p. 622.) This, then, gave appellee the right to levy upon this property, if the title was in Wm. Lewis, without seeking to levy on personal property. So that, in any point of view that has occurred to us, the levy was regular.

It is, however, said, that, if the fee to this land was in the judgment debtor by an unrecorded deed, there was no obstruction to its sale under execution, and the remedy was complete at law, and hence equity should not take jurisdiction to afford relief.

Suppose such a sale had been made, no redemption had, and appellee had acquired a sheriff's deed, does any one suppose that equity would not entertain jurisdiction to enjoin Hiram Lewis from asserting title against the purchase by appellee? Or to compel Wm. Lewis to discover by what title he held the property when the sale was made, and to restrain him and his heirs and assigns from ever asserting title? It strikes us that a court of equity would not hesitate to relieve against such a fraud. The jurisdiction in chancery is not so limited as to be powerless to afford relief against such fraudulent acts. And if equity will grant such relief after the sale is made and the title is vested in the purchaser, no reason is perceived why it should not under the lien of the judgment and the levy of the execution, that the purchaser may know what title he is acquiring, and that he may be relieved of subsequent litigation, to vindicate his title.

Equity relieves against almost every species of fraud, and as it assumes almost every conceivable form, courts have never defined the limit to the relief that will be granted, or the precise character of fraud that falls within their jurisdiction. We are clearly of opinion that an effort to obscure the title to real estate, or its conveyance, to defraud, hinder or delay creditors, affords grounds for relief.

It is said that there is no evidence that there are other creditors. Suppose there are no others, does any one suppose a fraud can not be perpetrated on one creditor? We pre-

sume not. If a fraud is perpetrated on one creditor, the principles of justice will as readily call the powers of equity into action to afford relief, as if the creditors were numerous. Justice demands that right be done to one person as speedily and as effectually as to many.

It is earnestly insisted that the evidence does not warrant the decree. A careful consideration of all of it strongly impresses us with the conviction that the sale to Hiram by the father was without consideration, and for fraudulent purposes, and that both parties actively participated in it, and the evidence tends strongly to prove that Hiram subsequently reconveyed to his father. But whether he has or not, in either case appellee is entitled to the relief sought, and which was granted by the decree.

Perceiving no error in the decree of the court below, it must be affirmed.

*Decree affirmed.*