A. J. Lindemann & Hoverson Company, Appellant,
v. Advance Stove Works et al., Appellees.

## Gen. No. 16,908.

1. PLEADING—*what admitted by demurrer in chancery.* A demurrer to a bill of complaint admits all allegations well pleaded. Such a demurrer, however, does not admit conclusions or inferences drawn by

the pleader, nor any construction put by the complainant upon the contracts referred to in the bill, but not set forth.

2. PARTNERSHIP—*what voluntary association not.* A voluntary unincorporated association organized for the purposes of regulating certain affairs of its individual members connected with and related to their individual enterprises, as affected by the demands of the labor unions formed by its employes, is not a partnership, even though incidentally it may accumulate property. *Held,* further, that the association in question in this case was not one terminable at the will of any of its members.

3. RESTRAINT OF TRADE—*what not combination in.* *Held,* that the unincorporated voluntary association referred to in the preceding paragraph of syllabus not having as one of its objects a regulation of prices, was not in restraint of trade, and further that its effect was not to restrict the right of a laborer to dispose of his labor.

Appeal from the Superior Court of Cook county; the HON. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed May 21, 1912.

**Statement by the Court:** Appellant filed its amended bill of complaint in the Superior Court to which certain defendants named in the bill demurred. The court sustained the demurrers. Appellant elected to abide by its amended bill, and the court dismissed the bill for want of equity, and rendered a decree against appellant for costs.

The amended bill is very voluminous, but it is necessary to state somewhat fully its averments. It alleges that complainant A. J. Lindemann & Hoverson Company, a corporation engaged in the manufacture of stoves, on April 8, 1904, became a member of an unincorporated association of manufacturers of stoves, known as Stove Founders' National Defense Association, the object of which association, as complainant was then advised, being to unite the stove manufacturers of the United States for their mutual protection for resistance against unjust demands of their workmen or others.

To become a member of this association it was necessary to make certain payments by way of assessment,

and certain contributions to what was known as an emergency fund, which emergency fund was to be used in case of certain exigencies. The amount chargeable against complainant as its proportionate contribution to the emergency fund, based upon the by-laws of the Association, was $2,855, of which amount the complainant paid in cash $1,455, and gave its thirty day demand note for the balance of $1,400. The note was dated April 8, 1904, and was payable to the order of Stove Founders' National Defense Association. Complainant on the same day signed the following agreement or members' obligation:

"We, the undersigned, being stove manufacturers, do hereby covenant and agree with each other, and every person composing the membership of the Stove Founders National Defense Association, as follows:

*First:* Any unjust demands made upon any member of said Association by any of their workmen, or others, shall be resisted by the united action of all members in protecting said member upon whom such unjust demand shall be made.

*Second:* We bind ourselves to obey the constitution, by-laws, and lawful regulations of said Association."

The bill avers that no emergency has arisen requiring any part of the emergency fund to be used by the Association, and complainant avers that there was no consideration for the note.

It is further set forth in the bill that at the time complainant became a member of the association there were certain provisions of the constitution and by-laws in existence which complainant does not set out in its bill verbatim, but states the same in the following manner:

That the constitution provided and still provides as follows: "That the objects of said association are to unite the Stove manufacturers of the United States for their mutual protection for resistance against any unjust demands of their workmen; that the members

of said association shall be corporations, persons or firms engaged as principals in and operating a foundry for the manufacture of cooking or heating stoves, ranges or furnaces; that the members of said association shall make and execute in writing an agreement or obligation in words and manner following," setting up the agreement above set forth. The bill then sets out the by-laws of the Association, which are not material to the questions presented on this appeal.

The bill alleges that the defense association has from time to time entered into conference agreements with Iron Molders Union of North America, with Stove Mounters and Steel Range Workers International Union of North America, and with the Metal Polishers, Buffers, Platers, Brass Molders, and Brass Workers International Union of North America, in and by which agreements the association has established for each year the rate of wages for the respective classes of employes aforesaid and for all of said employes employed by the members of said association and that said rate is established the same for all so employed by all of said members without any change during any current year, regardless of their skill and ability as molders, stove mounters, etc., and that by doing this the association has stifled the competition between the various members of the various trades unions located in various parts of the United States as to the price of their labor, and that thereby the said association has enhanced the cost of the articles produced and manufactured and sold by members of the association, and that by their action in this behalf the association increased wages and that wages are much higher than they would be but for the conference agreements, and that in consequence of conference agreements, complainant has had to pay higher wages to its employes and has been deprived of its free will in paying to its employes wages that would otherwise be agreed upon,

and that it has been obliged to pay a higher rate than it would have to pay otherwise.

The bill does not set out any conference agreement, but states that the conference agreements established and fixed the wages, and that by a conference agreement entered into about the 29th and 30th days of March, 1905, between said association and the Iron Molders Union, it was agreed that the general rate of apprentices to journeymen molders should be one to five and one to each shop, and that when the members desired more or required more for the needs of the business the question should be referred to the president of the association and the president of the union for investigation and relief; and the bill alleges that the association has enforced the agreement with relation to the ratio of apprentices and has prevented complainant from employing more than one apprentice to every five journeymen molders, and rendered it impossible for complainant to teach as many apprentices as it might see fit to become expert molders; and that this is in restraint of trade and has a tendency to prevent competition in labor.

The bill further alleges that the complainant believed that the objects and aims of the association were legal and legitimate until shortly before the time that it tendered its resignation as a member, when upon consultation with its attorneys it was advised that the objects and aims of the association had become illegal since complainant had become a member; and the complainant avers that the association had departed from its chief object, the resistance to unjust demands, and had entered into agreements annually with workmen through which instead of resisting unjust demands of workmen those unjust demands were sanctioned and approved, and that through the conference agreements between the association and the respective unions, a gigantic trust combination has been formed, in violation of the laws regulating com-

petition and restraint of trade, and the complainant avers that on November 27, 1908, being then in good standing with reference to the payments of its dues and assessments, and there being no strikes or settlement of difficulties pending, complainant tendered its resignation and demanded that the association forward the $1,400 note to it together with the sum of $1,455 cash that it had contributed to the emergency fund, which fund complainant alleges was intact, and had not been used for any purpose; and complainant alleges that its resignation was not accepted, and it further alleges that prior to the filing of the bill it from time to time protested to the officers and representatives of the association that the association had become illegal and was in restraint of trade, and an illegal combination with the object of stifling competition; but notwithstanding such protest the association still continues to enter into conference agreements with said labor unions.

The complainant further alleges that on April 7, 1909, Lewis Moore, who was treasurer of the association, and who is one of the defendants in this case, commenced suit in the Superior Court of Cook County, based upon the $1,400 promissory note aforesaid, which suit complainant alleges was caused to be filed by the said association, and complainant attaches to the bill of complaint as an exhibit the declaration in said suit, and further shows that on the 12th day of May, 1909, it filed certain pleas which it attaches and makes a part of the amended bill. Said pleas were six in number, as follows:

*First.* The general issue.

*Second.* That the note was without consideration and void, because given for unlawful and illegal purposes, having been given to further the purposes of an unlawful and illegal combination and conspiracy to control and regulate commerce and trade.

*Third.* That neither the appellant nor the presi-

dent thereof was authorized to execute such a note because the same was given in furtherance of an illegal combination and conspiracy to fix and control prices.

*Fourth.* That the note never was legally assigned or endorsed to Lewis Moore.

*Fifth,* That the note was given in furtherance of unlawful and illegal combinations and conspiracies to stifle and prevent competition, and was without consideration and void. That the plaintiff, Lewis Moore, had notice at the time he received the note that it had been given for unlawful and illegal purposes.

*Sixth.* That the note was given for the purpose of contribution to an emergency fund to carry out illegal purposes in restraint of trade and commerce, and that the note was given for the purpose of being used in furtherance of unlawful and illegal conspiracies to that effect, of which the said Lewis Moore, plaintiff, had notice.

The bill further alleges that Moore had been a long time treasurer of the association, and there was no consideration for the assignment and transfer of the note to him, and that the suit on the note was wholly for the use and benefit of the association, and that Moore is not the owner of the note; that the endorsement on the note is as follows: "Stove Founders' National Defense Assn., Lewis Moore, Treas.," and the complainant alleges that neither Moore nor the association is entitled to possession of the note and that said suit should be dismissed.

Complainant alleges that the expenses of conducting the affairs of the association have been shared by the members and paid pursuant to assessment on the members; that $5,000 a year is paid to the secretary and $10 a day to the president and to certain members of certain committees when they attend upon the affairs of the association, and also certain traveling expenses in connection with the settlement of the

difficulties are paid in the same manner, and all the necessary expenses of the executive committee and officers in hearing appeals, and also the rental of offices, all of which expenses this complainant alleges amount to a large sum of money. And the bill alleges further that no definite time has been fixed by the constitution and by-laws for the duration of the association, and that it can be dissolved at the will of any member, and that complainant elects to dissolve the association and have its affairs wound up; and alleges that the association was never incorporated and none of the defendants, except nineteen in number, named, reside in the state of Illinois.

The bill avers that complainant believes that there is about the sum of $100,000 in said emergency fund, to which it is entitled to its proportionate share, which it is informed and believes would amount to at least $3,800, but that as the amount obtained by the association from each member depends upon the number of employes at work for such member, it is impossible to determine accurately how much the association has received from all sources and what sum it would now have in the emergency fund without an accounting. And complainant alleges that a large part of the emergency fund is in the possession of the Joliet National Bank and the Merchants' Loan and Trust Company, and that it believes that some of it is in the possession of Lewis Moore, treasurer.

Complainant prays that the association may be declared illegal and void and be dissolved, and for an accounting, sale of assets, distribution of proceeds, payment to complainant of what may be due it; that if the association should be dissolved complainant's relationship may be declared severed; that the different banks and the executive committee and officers be restrained from transferring any part or disposing of any of the moneys or securities of the association until further order of the court; that the $1,400 note be

declared null and void and cancelled, and that Lewis
Moore be restrained from proceeding with his suit
thereon, and that all of the defendants be restrained
from paying out or doing anything with any of the
money in the emergency fund, and that a receiver
may be appointed for the association.

The bill is not sworn to and no injunction or order
of any kind was issued pursuant to any prayer thereof.

The original bill alleged, regarding the return of a
portion of the emergency fund, that a member retir-
ing from business and resigning, etc., should have re-
turned to him a proportion of the fund. This aver-
ment is not incorporated in the amendment to the
bill.

ARND & ARND, for appellant.

McCULLOUGH & McCULLOUGH and ALBERT C. WEN-
BAU, for appellees.

MR. JUSTICE F. A. SMITH delivered the opinion of
the court.

Many points are made in the briefs and it will be
impossible to discuss all of them or even any of them
at very greath length. We shall content ourselves
with a brief discussion of the main questions involved.

For the purposes of this appeal all the allegations
of the bill as amended that are well pleaded must be
considered to be true. On the other hand, the de-
murrer admits none of the conclusions or inferences
drawn by the pleader, nor any construction put by the
complainant upon contracts referred to in the bill, but
not set forth.

It is contended that the Stove Founders' National
Defense Association is a voluntary unincorporated as-
sociation organized for commercial purposes, and for
pecuniary profit and gain to its members, and that
the members of the association as between themselves

are partners, and the rights of those members are governed by the laws of partnership.

In our opinion the bill does not show the association to be one for the purpose of gain and profit, or that it is a co-partnership as between the members themselves. No profits attach to the business or work of the association, and none are contemplated by the constitution and by-laws. Its sole function and purpose is to regulate certain affairs of its individual members connected with and related to their individual business enterprises as affected by the demands of the labor unions formed by their employes, and its principal purpose seems to have its source in the advisability of united action in opposition to the united action of the labor union.

Story in his work on Partnership, 5th Ed., Sec. 2, defines the contract of partnership as: "A voluntary contract between two or more competent persons to place their money or effects, labor or skill or some or all of them in lawful commerce or business, with the understanding that there shall be a communion of profits thereof between them."

In 1st Collyer on Partnership, 6th Ed., Sec. 2, a partnership is defined to be: "A voluntary contract between two or more persons for joining together their money, goods, labor and skill or one or all of them, under an understanding that there shall be a communion of profits between them, and for the purpose of carrying on a legal trade, business, or adventure."

To the same effect is Lindley on Partnership, 2d American Edition, page 1.

If a voluntary association does not contemplate trade and profit it is not a partnership. If it accumulates property incidentally in the promotion of its real purpose that does not change the character of the association.

"Voluntary associations not having any well-defined legal status have under the pressure of necessity been treated by learned jurists as partnerships, and it has been held that in their relations to third persons their members are to be regarded as partners; but since the death of a member does not of necessity work a dissolution of the association, and there exists no authority in a single associate to bind the others, whatever may be their relation and liability to third persons, they are not partners *inter sese.*" (4th Cyc. 301, Note.)

To the same effect are the cases of Burt v. Lathrop, 52 Mich. 106; Hossack v. Development Association, 244 Ill. 274.

It is further urged that the defense association is one at will, and its life is terminable at the will of any of its members. This contention, in our opinion, is unsound. Hossack v. Development Association *supra.* 25 Am. & Eng. Ency. of Law, 2d Ed. page 1141.

It is next urged that the complainant is now entitled to a surrender of the note which it gave on account of the emergency fund of the defense association, and also to its proper proportion of the emergency fund, and that it has no adequate remedy at law to obtain a cancellation of the note.

The by-laws of the association as set up in the original bill, gave a member of the association, and therefore appellant, a right when it resigned and retired from business to a proportion of the emergency fund, but it does not give to the appellant, who does not aver that he has retired from business, a right to resign and at the same time claim a proportionate return of the emergency fund when it has not retired from business.

The original bill is still a part of the complainant's bill, although the amendment does not include all of its provisions. The amended bill is not a substitute for the original bill. Lewis v. Lanphere, 79 Ill. 187.

We do not think that the defense association is a co-partnership among corporations, nor do we think it is shown by the bill to be inimical to fair trade and commerce. The association is in no sense concerned with commerce and trade. It can only be considered as having any relation to commerce and trade because it seeks to deal in a collective manner with the demands of labor unions. Its objects and purposes are not to regulate prices, although prices may be as a mere incident to its objects and purposes directly affected. The constitution and by-laws as set forth in the amended bill show the organization to be an arbitration and conciliation association. No article, section or by-law set forth shows that it fixes prices or any of the elements of prices, or that it in any manner restricts production. We do not think it restricts the right of a laborer to dispose of his labor. The averments of the bill which seek to raise these questions, and upon which this contention is made, are mere conclusions of the pleader. The bill does not aver the terms of any of the conference agreements. It merely states that these agreements were entered into annually, but does not give the terms of the agreements. The pleader then concludes that the effect of these agreements was to restrain and restrict the right of laborers to dispose of their labor, and that they tended to stifle competition and to increase the rate of wages and thereby increased the cost of production. But upon an examination of the bill we are unable to say whether there is any foundation for the inferences and conclusions stated in the bill, for the reason that no facts are averred and no agreements are set out for the inspection of the court. It would be futile to the last degree for the court to discuss propositions based upon such averments of the bill.

We find no errors in the decree, and it is affirmed.

*Affirmed.*