**ESTATE of Robert R. WARE, Deceased, et al., Petitioner-Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 71–1881.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1973.

Decided June 13, 1973.

Calvin Sawyier, Crane C. Hauser, Chicago, Ill., for petitioner-appellant.

Scott P. Crampton, Asst. Atty. Gen., Richard Halberstein, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before KILEY, CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

This is an appeal by Robert R. Ware, Jr., executor of the estate of his father, Robert R. Ware, deceased, from a decision of the Tax Court to the effect that the value of the corpus of each of five family trusts created by the decedent in 1936 was includable in the father's gross estate for federal estate tax purposes. The tax deficiency involved was approximately $290,000.

The factual background of the controversy is set forth in depth in the Tax Court's opinion, 55 T.C. 69 (1970), and need not be repeated in similar detail here although we note certain salient facts. The trust instruments, while differing in regard to the identity of the beneficiaries, all family members, contain, insofar as the present appeal is concerned, language of similar import. The decedent "shall be and continue the sole Trustee hereunder as long as he shall live and remain competent to act as such Trustee." Decedent's two named brothers were to be successor trustees only if the decedent ceased to be sole trustee. There was no express provision for the decedent's resignation as sole trustee [1] nor for the renouncing or releasing of his trustee's rights or duties.

The crucial provision of the trust instruments in relation to this litigation was that income "shall, in the sole discretion of the Trustee herein, be distributed from time to time to the beneficiaries herein or accumulated for their respective benefits." The discretionary determination to accumulate or not to accumulate was vested in the successor trustees only "in the event said Trustee becomes incompetent" and then only during the period of such incompetency. In notarized documents executed on April 12, 1940, May 1, 1940, and May 14, 1943, the decedent obviously attempted to divorce himself, both individually and as trustee, from any connection whatsoever with the trusts. It does not seem to be contended otherwise, the controversy stemming from whether on an extremely technical basis he did not succeed in ridding himself of the discretionary power to accumulate income. The final attempt at repudiation of any connection with the trusts is exemplified by the following:

"I, Robert Rea Ware, * * *, did execute and deliver two instruments,

---

[1]. On the other hand, there was no express prohibition of voluntary resignation. Because our decision does not rest upon this issue, we express no opinion on the necessity of the inclusion of an express power in this respect. We do note two recent Supreme Court cases which, although arising in an entirely different factual and legal context, placed emphasis on the fact that there was no express prohibition of members' resignation from a union. Booster Lodge No. 405 v. National Labor Relations Board, 412 U.S. 84, 93 S.Ct. 1961, 36 L.Ed.2d 764 (1973); National Labor Relations Board v. Granite State Board, 409 U.S. 213, 217, 93 S.Ct. 385, 34 L. Ed.2d 422 (1972).

dated April 12, 1940 and May 1, 1940 respectively, by which I intended to and did irrevocably and forever renounce, resign, and relinquish any and all rights, privileges, titles, interests, duties, and claims of any and every nature and description whatsoever vested in me, as Trustee or as an individual, in said Robert Rea Ware Trust . . ., and in confirmation of said instruments dated April 12, 1940 and May 1, 1940 and by these presents, I, individually and as Trustee, hereby irrevocably and forever renounce, resign, assign, and relinquish to the beneficiaries thereunder, in accordance with their respective rights thereunder, any and all past, present, and future rights, privileges, titles, interests, duties, and claims of any and every nature and description whatsoever heretofore or now vested in, belonging, or reserved to me or hereafter vesting in, belonging, or accruing to me, as Trustee or as an individual, in and by the terms and provisions of said Robert Rea Ware Trust . . . ."

The record indicates that the decedent thereafter did not purport to have any connection with the trusts. He died a resident of Illinois, the law of which state is applicable, on July 25, 1964. In the interim, the brothers had resigned as successor trustees, and eventually each primary beneficiary was appointed pursuant to trust provisions as successor trustee of his or her own trust. There was never any accumulation of income.

In 1943, effective May 25 of that year, Illinois passed a Termination of Powers Act, Ill.Rev.Stats. ch. 30, §§ 177–182. Specifically, under § 180 a release of a power executed prior to the effective date is to have the same effect as if the Act had been in effect at the time the release was executed and delivered.

The types of "powers" covered by the Act are defined in broad and sweeping terms. While powers of appointment were included it seems clear that the scope of the Act was not limited to powers of this type only.

The principal thrust of the Tax Court decision was that under Illinois law the decedent could not resign as trustee without court approval and, not having it, he went to his grave undivested of the legal accouterments of the fiduciary status, specifically, with the power to control the manner of the disposition of income. The Tax Court therefore held that the deficiency was properly assessed under 26 U.S.C. § 2036(a)(2) (right to designate the persons who shall enjoy the income) and 26 U.S.C. § 2038 (reserved power to alter).

In reaching this result, the Tax Court dealt extensively with the Illinois Termination of Powers Act and determined that the Act did not accomplish what the decedent and his legal advisors obviously thought it did. In the family trust situation here involved it would have been a simple matter indeed for court approval of a resignation to have been secured, and, as the Tax Court observed, "[i]f he had done so, and had his application been accepted, his resignation would have been complete." As indicated, we entertain no doubt that the acceptance would have been almost automatic. He did not do so apparently because of the general belief among Illinois practitioners that a private inter vivos trust, as opposed to a testamentary trust, did not require court supervision in matters of this sort. This, of course, does not mean that a trustee in the case of the inter vivos trust can exceed the scope of the instrument-provided authority in administering the trust nor that he would not remain answerable in court to an injured cestui que trust if he purported to do so.

■ In any event, court approval was not secured and, while we question the correctness of the Tax Court's determination that court approval was here a sine qua non for legally effective

resignation,[2] we do not deem it necessary to reach that question, for we find that the action taken was effective under the Illinois Act to divest the decedent of his power to control the distribution of income during the pendency of the trusts.

Turning to the Illinois statute, *supra,* we find the following portions thereof significantly dispositive: [3]

"177. (a) 'Power' includes . . . any power to invade property, any power . . . to terminate any right or interest [under any instrument by which a trust is created], ' and any power remaining where one or more partial releases have heretofore or hereafter been made with respect to a power, whether heretofore or hereafter created or reserved, whether vested, contingent or conditional, and whether classified in law or known as a power in gross, a power appendant, a power appurtenant, a collateral power, a general, special or limited power, an exclusive or nonexclusive power, or otherwise, and irrespective of when, in what manner, or in whose favor it may be exercised.

(b) 'Donee' means any person whether resident or non-resident of this State who, either alone or with another has a power.

\*   \*   \*   \*   \*   \*

(d) 'Property' when used in connection with a power means . . . any and all *income from property,*

which is subject to the power, and includes . . . any part of the income from property.

(e) 'Release' means renunciation, relinquishment, surrender, refusal to accept, extinguishment, and any other form or release.

"178 . . . The donee of a power may:

(a) At any time completely release his power.

(b) At any time or times release his powers;

(1) As to any property which is subject thereto;

(2) As to any one or more of the objects thereof; . . . ."

■ The terms of the trusts provided that the trustee could direct at his discretion that income be accumulated rather than distributed. By exercising this power the trustee would have been merely exercising the reserved power to terminate the revocable right of a beneficiary to receive property (income).[4] This is a "power" included within the Act.

Under the provisions of the Illinois Act we have quoted above, it seems clear that the decedent released by his 1943 relinquishment, if he had not done so before, any vestige of his power to control the manner of distribution (or non-distribution) of income. We so hold.

■ We note two contentions of the Commissioner: First, even if one

2. No Illinois case has been brought to our attention turning on the precise point involved in the case of an inter vivos trust in which the instrument of creation does not provide explicit authority for resignation but does provide for fiduciary successorship, as to whether the trustee can legally resign without a court order. *Cf.* Aldridge v. Breisch, 144 Miss. 281, 109 So. 713, 714–715 (1926). The fact that the point has apparently never reached the decisional level in a state wherein we may safely assume lifetime trusts are not uncommon might be taken as some indication that in practice, at least, court approval is not deemed necessary. Also, appellant submitted to the Tax Court in support of

his motion for reconsideration a letter from acknowledged authorities on trust law supporting the position that no court consent was required in the present factual situation.

3. Section 179 of the Act is concerned with the mechanics of effecting release. No contention is advanced that there was not compliance with the Act in this respect if it otherwise was applicable.

4. While "invasion" would probably be confined to its technical meaning in this area of the law, it seems relatively certain that a beneficiary who failed to receive the income which was being accumulated might regard the matter as being an invasion of a property right.

assumes that the decedent's right to accumulate or distribute income was a power apparently within the definitions in the Act, it nevertheless was not one he could relinquish inasmuch as it was a power in trust; and, second, the emergency clause of the Act shows clearly it related only to changes in federal legislation broadening the scope of the taxability of powers of appointment. We find neither contention persuasive, because in our opinion, both are answered by the obvious purpose of the Act, namely, to permit the relinquishment of taxable powers. The taxability flowing from such powers should not be dependent upon whether they were held by a trustee or an individual. The fact that the passage of the Illinois legislation may have been prompted by an extension of federal taxability as to certain powers is insufficient reason to limit the plain, and broadly sweeping, wording and purpose of the Illinois statute. Further, recognizing as the Tax Court did that the law of Illinois is determinative of the rights and interests which the decedent had at his death, whatever the decisional law of the state pertaining to distinctions between powers and trusts may have been prior to 1943, we conceive that the state's legislature could ignore those distinctions in remedial legislation.

The Tax Court also in part relied upon the fact that the decedent never specifically attempted to release the power pertaining to accumulation. In this respect the Tax Court refers only to the documents of April 12, 1940. For some reason no reference was made in the decision to the crucially significant instruments of May 14, 1943. The language of these relinquishments was so sweeping in breadth that to have inserted a reference to a specific power might well have arguably produced a limitation on, rather than an extension of, the intended scope of the renunciation.

The appellant executor also relies in this appeal on a contention that because of the long lapse of time and the carrying out of the trust administration by others, the decedent's power to direct accumulation of net income did not effectively exist at the time of his death because the power had been extinguished by reason of abandonment, laches, and estoppel. While we do not conceive it beyond possibility that the Illinois courts might recognize such a "mantle of repose," see Becker v. Billings, 304 Ill. 190, 199, 136 N.E. 581, 585 (1922), we do not deem it necessary to reach this point.

The contention, however, does cause us to observe that while taxing authorities should not do less in collecting taxes than that required by the legislation involved, even though that may involve technical applications in what is admittedly a technical area of our jurisprudence, we nevertheless do not conceive upon all of the facts of this case that the expressed intent of Congress to impose taxability where control of disposition remains until the grave is in any way served.

Accordingly, the decision of the Tax Court is reversed and the cause is remanded for the entry of a judgment in favor of the petitioner.

Reversed.