(No. 13952.—Decree affirmed.)

ABRAHAM G. BECKER, Appellant, *vs.* CORNELIUS K. G. BILLINGS *et al.* Appellees.

*Opinion filed June 21, 1922—Rehearing denied October 21, 1922.*

1. CORPORATIONS—*directors are quasi trustees and not trustees of an express trust.* While directors of a corporation are trustees for the stockholders and their fiduciary relation is always recognized, they are not trustees of an express trust but are rather of the character of *quasi* trustees.

2. SAME—*directors cease to be trustees when assets are turned over—Statute of Limitations.* The relation of the directors as trustees for the stockholders ceases when they cease to be directors or have turned over the assets of the corporation so that they have no further control of its business, and the Statute of Limitations applies to a bill in equity against directors who ceased connection with the corporation more than five years prior to the time the bill was filed or to the time they were made defendants.

3. PLEADING—*amendment is a continuation of the original bill—lis pendens.* An amended bill or an amendment to the bill is a continuation of the original bill of which it is considered a part, the two together constituting one record, but an amendment is sometimes of such a character that it is regarded as an independent graft upon the original case and the beginning of a new *lis pendens.*

4. SAME—*when amendment to bill will be regarded as beginning new suit—Statute of Limitations.* Where an amendment to

a bill sets up a new equity or where the party making the amend-
ment brings forward a new claim or ground of relief not before
asserted the suit will be regarded as begun at the time of filing
the amendment and will not relate back to the filing of the origi-
nal bill, and although the amendment or amended bill makes the
same parties defendant they are entitled to the benefit of the Stat-
ute of Limitations up to the time of the filing of the amendment.

5. BANKS—*when an amendment to bill against bank directors
states a new cause of action.* Where a stockholder's bill against
the directors of a bank originally charges them with neglect or
omission of the duties of directors and with failure to pay any at-
tention to the business of the bank, an amendment to the bill charg-
ing them with fraudulently using their power, as directors, over
the business and funds of the bank to produce a profit to a third
party at the expense of the bank states a new cause of action, and
a defendant director, although he was a party to the original bill,
is entitled to the benefit of the Statute of Limitations up to the
time of the filing of the amended bill.

6. SAME—*what constitutes cause of action against directors of
bank.* In a bill filed by a stockholder against the directors of a
bank charging them with loss to the bank through their acts or
omissions, the cause of action is not the loss to the bank and is
not the right of the bank to hold the directors or any one of them
liable for the loss, but it is the act or omission of the directors
which caused the loss and gave to the bank the right to hold them
liable which constitutes the cause of action.

7. APPEALS AND ERRORS—*an appellee or defendant in error may
sustain decree by new argument on rehearing.* An appellant or
plaintiff in error who brings a case to an appellate court for re-
view must indicate by his assignment of errors the errors of which
he complains and his argument must be confined to the errors so
assigned, but an appellee or defendant in error, even on rehear-
ing, is entitled to sustain the decree by any argument and upon
any basis appearing by the pleadings, as the granting of a rehear-
ing opens the whole case for argument upon any questions appear-
ing in the record.

DUNCAN and STONE, JJ., dissenting.

APPEAL from the First Branch Appellate Court for the
First District;—heard in that court on appeal from the Cir-
cuit Court of Cook county; the Hon. M. W. PINCKNEY,
Judge, presiding.

NEWMAN, POPPENHUSEN, STERN & JOHNSTON, (JACOB F. NEWMAN, and CHARLES T. FARSON, of counsel,) for appellant.

COOKE, SULLIVAN & RICKS, ROSENTHAL, HAMILL & WORMSER, BUTZ, VON AMMON & MARX, McCULLOCH, McCULLOCH & DUNBAR, and SCOTT, BANCROFT, MARTIN & STEPHENS, (JESSE J. RICKS, LESSING ROSENTHAL, FREDERICK Z. MARX, B. W. ROSENSTONE, HORACE H. MARTIN, I. H. FATHSCHILD, EDWARD H. FIEDLER, and GEORGE W. SWAIN, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Chicago National Bank and the Home Savings Bank, banking corporations in Chicago, failed on December 18, 1905. The former was organized under the National Banking act and the latter under the State Banking act of Illinois. Their respective boards of directors for many years before the failures, each having seven members, consisted of the same persons, except that each had one director who was not a member of the other board. Fred M. Blount was a director of the National bank but not of the State bank, and William J. Onahan was a director of the State bank but not of the National bank. The other six directors of each bank were Cornelius K. G. Billings, John R. Walsh, John M. Smyth, Andrew McNally, Maurice Rosenfeld and William Best. On May 7, 1904, Andrew McNally died, and afterward Fred G. McNally was elected a director of each bank. Walsh was president of the Chicago National Bank. During 1899, 1900 and 1901 Billings was president of the Home Savings Bank, and after 1901 Onahan was president until the failure.

In 1910 two bills were filed in the circuit court of Cook county, the first by certain stockholders of the Chicago National Bank in behalf of themselves and of all other stockholders who might choose to join as complainants, against

Billings and the Chicago National Bank; the other by Abraham G. Becker, as a stockholder in the Home Savings Bank, in behalf of himself and all other stockholders who might choose to join, against Billings and the Home Savings Bank. The bills charged misappropriation and loss of the funds of the respective banks by John R. Walsh in consequence of the negligence of Billings in violation of his duties as director, and prayed for an accounting and a decree against Billings to pay to the banks, respectively, the amount of damages so occasioned by his neglect. A supplemental bill, which was amended, was filed, a temporary injunction was granted and a receiver appointed in each case, as set forth in the opinion in *Wallach* v. *Billings,* 277 Ill. 218. Upon appeals from these orders the Appellate Court reversed the order granting the injunction and affirmed the order appointing a receiver in the case of the National bank but affirmed both orders in the State bank case. (*Wallach* v. *Billings,* 161 Ill. App. 317; *Becker* v. *Billings,* id. 351.) After the causes were remanded to the circuit court a demurrer was sustained in each case to the bill, the supplemental bill and the amended supplemental bill, and leave was given to file an amended and supplemental bill. In the National bank case a demurrer by Billings was sustained to this amended and supplemental bill, it was dismissed for want of equity, and upon successive appeals by the complainant to the Appellate and Supreme Courts the decree was affirmed. (*Wallach* v. *Billings,* 277 Ill. 218.) In the meantime the State bank case was continued in the circuit court, the time for filing the amended and supplemental bill being extended from time to time until after the final decision in the National bank case in the Supreme Court, in February, 1917. On August 21, 1918, an amended original and supplemental bill was filed, by which for the first time the survivors of the board of directors at the date of the failure and the heirs of the directors who had died since that date, with perhaps some

304—13

exceptions, were made defendants. Demurrers were filed to this bill by various defendants, they were all sustained and the bill was dismissed for want of equity. The complainant appealed, the Appellate Court affirmed the decree and granted a certificate of importance, and the complainant has appealed to this court.

The amended and supplemental bill averred the organization of the banks, their failure and the composition of their boards of directors, as already stated, and set forth the by-laws of the Home Savings Bank, providing, among other things, that regular meetings of the board of directors should be held on the second Monday of each month; that the board of directors at the beginning of each year should appoint from its own number, or from among the stockholders, an auditing committee of two members, to examine from time to time and report in writing to the board of directors as to the state of the books, accounts, securities, business and affairs of the bank, and that the policy of the bank as to investments should be to invest its funds in United States government bonds and in the highest class of municipal securities, but the board of directors should in all cases first authorize the purchase of or investment in securities and that no loans of any kind should be made by or on behalf of the bank. The bill then alleged that the directors and officers, and each of them, continuously from January 5, 1899, to December 18, 1905, willfully, deliberately and continuously failed and neglected to observe, perform and discharge their duties as such directors and as such officers, and each and every of their said duties as prescribed and imposed upon them by the by-laws of the bank and by the laws of the State of Illinois, and as the direct and immediate result of such failure and neglect the bank became insolvent and was obliged to cease doing business; that among the duties of the directors which they so willfully, deliberately and continuously failed to perform, were to attend the meetings of the board of directors once

in each month; to prescribe proper and sufficient rules and regulations for the government of the bank and for the control and supervision of the executive officers; to supervise, examine and inspect the business transacted by the bank, for the purpose of seeing that it was properly, lawfully and safely managed in conformity with the laws of the State and the by-laws of the bank; to appoint an auditing committee, as required by the by-laws of the bank, and see that the committee performed its duty and made reports to the board of directors; to prevent the unlawful use, misapplication or waste of the funds of the bank; to see that no securities were purchased with such funds or the money of the bank invested without the authority of the board of directors, but that the policy of the bank with respect to its investments, as prescribed by its by-laws, was carried out by investing its funds in United States government bonds and in the highest class of municipal securities; and to diligently, honestly and continuously, while they were directors, administer and supervise the business of the bank in accordance with the by-laws and the laws of the State. It was charged that in violation of these duties the directors and officers knowingly, willfully and continuously permitted Walsh and the corporate enterprises which he owned or controlled to obtain from the bank large sums of money, amounting to more than three million dollars, upon wholly inadequate or worthless securities, which were known to the directors and officers, at the time the moneys were invested in such securities, to be wholly inadequate or worthless. The bill set out at considerable length the relation of the two banks and their boards of directors. It alleged that Walsh during the years from 1897 to 1905 owned substantially all of the capital stock of eight named corporations, which were called in the bill Walsh corporations, or controlled and dominated them for his own use; that the businesses in which these corporations were engaged were speculative and hazardous, and the board of directors of

the Home Savings Bank, and each member of the board and the officers of the bank, well knew that they were of that character, but that they permitted Walsh to cause the bank to purchase from him and from or through the Chicago National Bank, and from the Walsh corporations or some of them, bonds and bond certificates and securities issued by the Walsh corporations which were without any intrinsic or market value, and that such purchases were made by the board of directors of the Home Savings Bank when it knew that such bonds, bond certificates and securities were worth at the time not to exceed one-third of the amount of money paid for them by the Home Savings Bank; that in purchasing such bonds, bond certificates and securities the directors of the bank made no inquiry as to their intrinsic or market value but recklessly relied wholly upon representations and statements of Walsh. The bill set out specifically the various securities bought, the amount paid for them and their value and the amount realized from them, showing a loss of more than $2,500,000,—more than the entire capital stock and surplus of the bank, the capital stock being $100,000 and the surplus more than $200,000. The bill then averred the death of Andrew McNally, Fred G. McNally, John M. Smyth and John R. Walsh and made numerous persons defendants as their representatives, together with the survivors of the original board of directors and the members of the board of directors at the time the bill was filed, and prayed that the original directors and their representatives might be decreed to pay to the bank the loss sustained by reason of their negligence as directors. The original bill averred a demand upon the directors of the bank to bring suit and their failure to do so, and the supplemental bill first filed, which was sworn to, contained the allegation that during the years 1901 to 1905, inclusive, when Billings was a director of the bank, during which time the principal losses sustained by the bank were incurred, all the directors of the bank except Billings were

under the domination and control of Walsh mentioned in the original bill and obeyed his orders implicitly; that Billings is a man of ability and experience in large business affairs, and worth, on information and belief, more than $10,000,000; that if Billings had attended the directors' meetings, as he should have done, he would have discovered that Walsh was misappropriating the funds of the bank and could thereby have prevented any considerable loss to the bank. It was also averred that Billings, though not a resident of Illinois, was the owner of real and personal property in the State worth more than $1,000,000.

On the part of the defendants who were not made parties to the original bill until the amendment of August 21, 1918, it is contended that the Statute of Limitations is a bar to the maintenance of the bill against them. On the part of Billings it is contended, independent of any reference to the Statute of Limitations, that the decision in *Wallach* v. *Billings*, 277 Ill. 218, is conclusive against his liability in this case; that he did not owe to the stockholders the duty of passing upon securities purchased by the bank; that his inaction was not the proximate cause of loss to the bank; that the appellant acquiesced in the wrongs complained of; that there is a lack of necessary parties; that a receiver having been appointed, the appellant could not maintain the bill until after demand on the receiver and his refusal to sue, and that the appellant had an adequate remedy at law.

The appellant insists that the appellees are trustees of an express trust, in whose favor the Statute of Limitations does not run, and relies upon the case of *Ellis* v. *Ward*, 137 Ill. 509, in which the doctrine was applied to a bill in equity by the receiver of an insolvent corporation to require the directors to re-pay money which they had misapplied, the court saying: "Ordinarily an express trust is created by a deed or will, but there are many fiduciary relations established by law and regulated by settled legal rules and

principles where all the elements of an express trust exist and to which the same legal principles are applicable, and such appears to be the relation established by law between directors and the corporation." While it has been frequently said that directors of a corporation are trustees for the stockholders and their fiduciary relation is always recognized, there is no other case in this court holding them to be trustees of an express trust, and there are numerous decisions in other States to the contrary. (*Boyd* v. *Mutual Fire Ass'n,* 116 Wis. 155; *Emerson* v. *Gaither,* 103 Md. 564; *Cullen* v. *Coal Creek Mining Co.* 42 S. W. (Tenn.) 693; *Wallace* v. *Lincoln Savings Bank,* 89 Tenn. 630; *Baxter* v. *Moses,* 77 Me. 465; *Spering's Appeal,* 71 Pa. 10; *Lippitt* v. *Ashley,* 89 Conn. 451; *Pearson* v. *Concord Railroad Corp.* 62 N. H. 537; *Landis* v. *Sexton,* 105 Mo. 486; *Cooper* v. *Hill,* 94 Fed. 582.) In *Gottlieb* v. *Miller,* 154 Ill. 44, where it was claimed that the directors of an insolvent corporation were trustees of its assets for the benefit of its creditors, the court said: "The proposition refers to the assets of an insolvent corporation as a 'trust fund' and to the officers of the corporation as 'trustees.' This is not strictly accurate. The supposed trust does not fall within the definition of either an express trust, an implied trust, a resulting trust or a constructive trust. (1 Perry on Trusts,—2d ed.—secs. 24-27, inclusive.) At most, the assets of a corporation are, under some circumstances, a *quasi* trust fund, and the directors or officers of the corporation, under some circumstances, *quasi* trustees." In *Briggs* v. *Spaulding,* 141 U. S. 132, it is said: "Bank directors are often styled trustees, but not in any technical sense. The relation between the corporation and them is rather that of principal and agent,—certainly so far as creditors are concerned, between whom and the corporation the relation is that of contract and not of trust. But, undoubtedly, under circumstances they may be treated as occupying the position of trustees to *cestui que trust.*" This

statement seems to be in accordance with the weight of authority, but there are other cases in which the decisions are contradictory.   Cases where the application of the Statute of Limitations has been recognized vary as to the time when it commences to run,—whether at the time of the doing of the acts complained of, (*Thomas* v. *Richter,* 88 Wash. 451; *Link* v. *McLeod,* 194 Pa. 566; *Mason* v. *Henry,* 152 N. Y. 529; *Cooper* v. *Hill, supra;*) or at the time of their discovery.  (*Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252; *Brinckerhoff* v. *Roosevelt,* 143 Fed. 478.)   Even if the directors are regarded as trustees, the relation of trustee and *cestui que trust* ended when they ceased to be directors, and when that relation is absolutely ended, whether by breach of trust or otherwise, the statute applies.  (2 Perry on Trusts, sec. 864; *Wyckliffe* v. *Lexington,* 11 B. Mon. 155; *Spering's Appeal, supra; Lexington and Ohio Railroad Co.* v. *Bridges,* 7 B. Mon. 556.) In the case of *Ellis* v. *Ward, supra,* the defendants were the directors who had misappropriated the money and who were still directors of the company when the bill was filed against them.  "It may be conceded that so long as a trustee continues to exercise his powers as trustee in regard to property that he can be called to an account in regard to that trust, but when he has parted with all control over the property and has closed up his relation to the trust and no longer claims or exercises any authority under the trust, the principles which lie at the foundation of all statutes of limitation assert themselves· in his favor and time begins to cover his past transactions with her mantle of repose." (*Clarke* v. *Boorman's Exrs.* 18 Wall. 493.)   The directors turned over the assets of the bank on December 18, 1905, to the Chicago Clearing House banks and after that time had no control of the business of the bank.   If the appellant did not then fully know of the existence of his cause of action against them and each of them, he had learned of it when he filed his original bill, on November 14,

1910, and made only Billings and the bank parties defendant. The persons who were then directors were made defendants to the supplemental bill, but it was not until more than seven years later that the other directors, besides Billings, who participated in the wrongful acts complained of were made defendants. As to them the statutory time had elapsed and their demurrers were properly sustained.

Billings also claims the benefit of the Statute of Limitations, but as to him the case presents a different aspect. He was a party to the original bill, which was filed within the five-year limitation of the statute, and he can have the benefit of the statute only on the theory that the amended bill, filed August 21, 1918, states a new cause of action against him which had not been previously alleged. The only charge in the original bill was a general charge that Billings wholly neglected every duty which rested upon him as a director of the bank; that he neglected to attend any meetings of the board of directors or to devote any time or pay any attention to the business of the bank or to his duties as director, and that by reason of such negligent conduct Walsh was permitted to, and did, take the entire domination, direction and control of all the business operations and transactions of the bank and conducted the same in all particulars in accordance with his own wishes and purposes, entirely free from any control, supervision or restraint on the part of Billings or any of the other directors or officers of the bank, and was permitted to, and did, practice a systematic course of mismanagement, misappropriation and waste of the funds and assets of the bank in the manner which has been previously stated. The charge was negligence, only. There was no allegation that Billings knew anything about the condition of the bank or its business or had any reason to believe that its affairs were not carefully and honestly managed by its officers and the other directors. In fact, the contrary inference might arise from the allegation that he paid no attention whatever to

the business of the bank. Whatever liability he might be charged with arose from negligence, only, and not from any action on his part. This was the cause of action stated in the original bill and the supplemental bill and amendment made in 1910. On August 21, 1918, by leave of the court the appellant filed an amended original and supplemental bill, which, omitting some of the allegations of the previous bills and amendments in explanation and definition of the charge of negligence against Billings which had been contained in the previous bills and was retained in the amended and supplemental bill, averred that the business of the various Walsh corporations was speculative and hazardous in its character; that the board of directors of the Home Savings Bank, and each member of the board, knew that this was their character; that the purchases of the bonds and securities of those corporations were made by the board of directors when they knew that such bonds and securities were worth not to exceed one-third of the amount of money paid for them by the bank, and that in purchasing the bonds and securities the directors named, one of whom was Billings, made no inquiry as to their intrinsic or market value; that the purchases of the bonds and securities of the Walsh corporations, as set forth in the amended bill, were unlawful, reckless, hazardous and dishonest banking and were known to the board of directors, and each member of the board, at the time they occurred, to be improper, unlawful, reckless, hazardous and dishonest transactions; that the purchases were not made in the interest of the bank nor for the purpose of procuring safe and secure investments for the funds of the bank, but were made at the solicitation of Walsh for the sole purpose of enabling him to secure funds for the purpose of carrying on the business of the Walsh corporations, and by reason thereof the Home Savings Bank was defrauded out of a large part of the money so invested in such bonds and securities.

This amended bill contained no allegation that Billings was not at all times a resident of this State or that all the directors of the bank except Billings were under the domination of Walsh, and there is nothing distinguishing the charge against Billings from the charge against the other directors. The parties have discussed at some length the effect of the omission of the allegations mentioned from the amended bill. There was no order striking them from the record, and the rule of equity pleading is that an amended bill or amendment to ,the bill is a continuation of the original bill of which it is considered a part, the two together constituting one record. (*American Freehold Land Mortgage Co.* v. *Sewell,* 92 Ala. 163; *Lewis* v. *Lanphere,* 79 Ill. 187; *French* v. *Hay,* 22 Wall. 238.) But the amendment is sometimes of such a character that it is regarded as an independent graft upon the original case and the beginning of a new *lis pendens.* (*French* v. *Hay, supra.*) When the amendment sets up a new equity, or where the party making the amendment brings forward a new claim or a different and distinct ground of relief not before asserted, the suit will be regarded as begun at the time of filing the amendment and will not relate back to the filing of the original bill. (*Norris* v. *Ile,* 152 Ill. 190.) Where an amendment making new parties to a bill to obtain a legal title to land was made several years after the original bill was filed, the suit was not regarded as commenced against the new parties at the time of commencing the suit originally, but they were entitled to the benefit of the Statute of Limitations at the time the amendment was filed. (*Miller's Heirs* v. *McIntyre,* 6 Pet. 61.) The same principle must apply to the introduction of a new claim against the same parties.

Billings has contended at all times that the original bill and supplemental bill as first amended stated no cause of action against him. However this may be, it is clear that if they did state a cause of action it was not the same

cause of action as that stated in the amended and sup-
plemental bill last filed. The latter bill, instead of being
founded on non-feasance, mere neglect and omission to do
anything, charges a fraudulent breach of trust, actual, in-
tentional wrongdoing in the purchase of bonds and secur-
ities of corporations engaged in business which Billings
knew to be speculative and hazardous, at three times their
value, not for the purpose of making safe investments of
the funds of the bank but for the sole purpose of enabling
Walsh to secure funds for the purpose of carrying on the
speculative and hazardous business of the Walsh corpora-
tions. The charges against Billings are the same as those
against all the directors, and accuse all of a common de-
sign, which was jointly carried out, to fraudulently convert
the funds of the bank for Walsh's benefit. These charges
in the amended bill must be regarded as inconsistent with
the charges in the original bill of a total failure to pay
any attention to the business of the bank. The act of pur-
chasing securities known to be speculative with the funds
of the bank, at a price known to be three times their value,
for the sole purpose of enabling the seller of the securities
to obtain the funds of the bank to carry on the hazardous
business of the corporations whose securities are involved,
is not merely a failure to pay any attention to the business
of the bank, it is fraudulently using power over the busi-
ness and funds of the bank and attending to its business in
such a way as to produce a profit to another at the ex-
pense of a loss to the bank.

The appellant argues that the cause of action as stated
in the amended bill is the same as that set forth in the
original bill because both causes of action arose out of Bill-
ings' duty as a director, his failure to perform any of his
duties and the consequent loss to the bank, and his counsel
say that the bank's cause of action is its right to hold Bill-
ings liable for the loss flowing from his failure to perform
his duties as a director. This is not a correct definition of

the cause of action. The cause of action is not the loss of the bank and is not the right of the bank to hold Billings liable for the loss. It is the act or omission of Billings which caused the loss and gave the right to the bank to hold him liable which constitutes the cause of action. This principle is well recognized and has been frequently stated. (*Mooney* v. *City of Chicago,* 239 Ill. 414; *Crane* v. *Chicago and Western Indiana Railroad Co.* 233 id. 259.) These were actions at law, but the principle is equally applicable in equity. Indeed, for such acts as are alleged against Billings and his associates in the amended bill the bank could have maintained an action on the case against them all, jointly or severally, but the cause of action for the negligence stated in the original bill would not be the same as that for an intentional conversion stated in the amended bill. The difference is that between a charge of negligently losing the money and willfully taking it.

Both the original bill and the amended bill are based upon a breach of duty of Billings, but they state entirely different breaches and conduct altogether inconsistent. It is impossible for the allegations of both bills to be true, and evidence which sustains one will disprove the other. The original bill made no charge of any wrongful act against Billings. It would have been a defense to the cause of action set up in it that Billings was an invalid, who was prevented by the condition of his health from attending to the business of the bank at the times when the investments in the securities of the Walsh corporations were made, (*Briggs* v. *Spaulding, supra,*) but such a defense could not be made to the charge contained in the amended bill, of active, fraudulent participation in the purchase of the securities. That charge was first made in the cause when the amended bill was filed on August 21, 1918, which was more than twelve years after the cause of action arose and Billings ceased to be a director. That amended bill contained no allegation that Billings was not a resident

of Illinois. The supplemental bill does contain an allegation that he was not a resident of Illinois, but this bill was filed more than seven years before the amended and supplemental bill now under consideration, and its allegation that Billings was not then a resident of Illinois is not a statement that he was not a resident of Illinois on August 21, 1918, or had not been a resident for more than five years before that date.

The appellant contends that in his brief originally filed in this court Billings did not claim the benefit of the Statute of Limitations and therefore has waived it. The conclusion does not follow. One of the grounds of demurrer alleged in the circuit court was the Statute of Limitations. After the first opinion in this case was filed a rehearing was granted, the result of which was to open the whole case for argument upon any questions appearing in the record. (*Colesar* v. *Star Coal Co.* 255 Ill. 532; *Public Utilities Com.* v. *Pittsburg, Cincinnati, Chicago and St. Louis Railroad Co.* 290 id. 580.) An appellant or plaintiff in error who brings a case to an appellate court for review must indicate by his assignment of errors the errors of which he complains and his argument must be confined to the errors so assigned. An appellee or defendant in error is subject to no such requirement. He is entitled to sustain the decree of the trial and appellate courts by any argument and upon any basis appearing in the record which shows that the decree is right, even if he had not previously advanced such argument. *Mulvihill* v. *Shaffer,* 297 Ill. 549; *Hartford Fire Ins. Co.* v. *Peterson,* 209 id. 112.

The Statute of Limitations was a bar to the maintenance of the appellant's suit against all the appellees, and the demurrer was properly sustained.

The decree will be affirmed.          *Decree affirmed.*

Mr. JUSTICE STONE, dissenting:

I cannot concur in the opinion filed in this case so far as it relates to the bill against appellee Billings. The original

bill filed against Billings alone in 1910 was predicated on his alleged negligence in failing to perform his duties as director of the Home Savings Bank. This bill was filed within five years of the failure of the bank, and it is not questioned that it was filed within the statute. The amended original and supplemental bill filed August 21, 1918, made all of the directors of this bank, including Billings, parties defendant, and, as I view it, was predicated upon the negligence of all the directors of the bank, and it further contained the additional charge of willful, deliberate and continuous failure of those directors to perform their duties as such; that by the negligence of the directors, and their willful, deliberate and continuous failure to perform their duties as such, the losses occurred and the bank failed. That the amended original and supplemental bill was open to the defense of the Statute of Limitations, so far as the defendants other than Billings are concerned, seems clear, and in that portion of the opinion I concur. The opinion filed does not pass upon whether or not the original bill stated a cause of action, but, in effect, holds the amended original and supplemental bill abandoned the original charge of negligence and was predicated solely on the willful and deliberate failure of the directors to perform their duties. The language of the bill will not admit of that construction. The original bill, after averring the relationship of Billings to the bank, sets out in detail his duties as director as prescribed by the by-laws and the principles of good banking. It then charged that he wholly failed and neglected to perform those duties, averring numerous respects in which that failure occurred, and that by reason of such negligent conduct on his part, and as a result thereof, the losses to the bank occurred. The original bill then sets out different special items of loss, and prays that Billings may account for such loss by reason and in consequence of his negligence in violation of his duty as director of the bank and that he be decreed to pay such losses.

The amended original and supplemental bill, after setting out the duties set forth in the by-laws, averred that it was the duty of the directors, including Billings, to perform them, but that they "utterly failed and neglected" to do so. That bill then charges that the directors willfully, deliberately and continuously failed to perform their duties as directors. It also charges "that as the direct and immediate cause and consequence of such failure and neglect on the part of said directors and said officers to observe, perform and discharge their said duties," the bank became insolvent and the stockholders sustained the losses set out in that bill. It then sets out various specifications of duties which by reason of their negligence and willful and deliberate failure the directors did not perform. This bill also charges that the directors, and each of them, knew, "or by the exercise of ordinary care and diligence would have learned and known, that Walsh would be unable to secure the bank against loss as to his loans." After specifying the losses to the bank the bill charges "that as the direct result and consequence of the neglect and unlawful conduct of the directors of the Home Savings Bank as herein set forth, and the unlawful misappropriation of the funds of the Home Savings Bank by John R. Walsh, * * * the Home Savings Bank sustained and suffered the loss of the greater part of its money, assets and property," etc. The bill also charges that this loss was "brought about by the willful, deliberate and continuous negligence of the board of directors of the Home Savings Bank and of each member of said board, and their failure to supervise the business, property and affairs of the bank, and to supervise and control the affairs of the bank, and to guard and protect its funds, assets and property from the unlawful misappropriation and waste in this bill set forth, as it was their plain duty to do." The prayer of the bill is "that an accounting may be had of the moneys, funds and property of the Home Savings Bank which were unlawfully, wrongfully and fraudulently

misappropriated, misapplied, lost or wasted, or permitted or suffered to be misappropriated, misapplied, lost or wasted, by reason and in consequence of the negligence of the defendants, [naming them,] and that the loss and damage which the Home Savings Bank has sustained by reason of such negligence may be ascertained and assessed, and may be adjudged to be paid by the defendants in this cause, or some of them."

From these averments in the amended original and supplemental bill it appears to me, beyond argument, that it is based both upon the charge of negligence in the performance of the duties of the directors, including Billings, and that of willful and deliberate wrongdoing on their part. In the former charge the last bill in nowise departs from the original bill filed in this case against Billings. If this be true,—and it seems to me incontrovertible,—it certainly follows that the defense of the running of the Statute of Limitations does not exist as to Billings, so far as concerns the charge of negligence contained in both bills.

Even though it be conceded that a joinder of these two charges renders the bill multifarious, it cannot be said that it amounts to an abandonment of the charge in the original bill. It is not assigned on demurrer or argued that the bill is multifarious. Such objection must be specified on demurrer. (*Labadie* v. *Hewitt*, 85 Ill. 341.) The appellant here should not be deprived of the right to a hearing on the merits of the charge of negligence set out in both these bills. The opinion does not pass upon whether or not the original bill stated a cause of action, nor, under the view taken in the opinion as to the abandonment of the original bill, was it necessary so to do. That question should be determined on this record. If the original bill states a cause of action Billings should be required to answer the charge of negligence in the last bill filed.

The basic question in this lawsuit, so far as defendant Billings is concerned, is his liability for negligence in fail-

ing to perform his duties as director. The question is one of the duty of bank directors toward stockholders. Directors of a bank are selected by the stockholders to manage the business of the bank. Their selection arises out of the confidence reposed in them by the stockholders. No bond is required of them. Their acts in the regular course of the business of the bank are the acts of the highest authority within the corporation. No hard and fast rules can be laid down concerning their duties. By the decisions of this court and those of other jurisdictions, they may in general be stated to be the exercise of such care, skill and diligence in the transaction of the business of the bank as prudent men exercise in the conduct of their own affairs. That duty is one of ordinary diligence and care in the supervision and control of the affairs of the bank and in knowing the condition of its business. Directors are not insurers against loss to the bank, nor are they guarantors of the fidelity and honesty of its officers, nor against losses arising from the defalcation or wrongdoing of such officers, provided the diligence and care of a prudent man have been exercised by them in the control and supervision of the transactions of such officers. What constitutes ordinary care on the part of a bank director depends upon the circumstances surrounding the occasion calling for its use. If he knows or should have known of facts or occurrences that would arouse the suspicion of a prudent man the degree of care required is that commensurate with the evil involved. He cannot say, "I did not know," when a prudent man would have found out. While he cannot be required to go over the routine of every day's business of the bank, he should have a general knowledge of such matters as require the supervision and approval of the directorate and exercise such supervision in accordance with the laws governing the corporation and its by-laws. These rules are based upon reason and have been recognized and adopted, in substance, by this court and those in numerous other jurisdictions. *Chicago Title and*

304—14

*Trust Co.* v. *Munday,* 297 Ill. 555; *Bowerman* v. *Hamner,* 250 U. S. 504; *Warner* v. *Penoyer,* 91 Fed. 588; *Charitable Corporation* v. *Sutton,* 2 Atkins, 400; *Wilkinson* v. *Dodd,* 42 N. J. Eq. 234; *Robinson* v. *Smith,* 3 Paige, 222; 2 Thompson on Corporations,—2d ed.—sec. 1266.

It has been held in this State and other jurisdictions that directors of a bank who do not use reasonable diligence in giving attention to their duties are equally liable with those by whose acts the loss occurs if they negligently suffer such loss to occur through inattention to duty on their part. *Chicago Title and Trust Co.* v. *Munday, supra; Delano* v. *Case,* 121 Ill. 247; *Bowerman* v. *Hamner, supra; Ackerman* v. *Halsely,* 37 N. J. Eq. 364; *Corbett* v. *Woodward,* 5 Sawyer, 403; *Fisher* v. *Parr,* 92 Md. 245.

The law of this State does not differentiate in the duties of directors. It follows that in a suit by a stockholder, consent or acquiescence on the part of the stockholder to an arrangement whereby a director may limit the performance of his duties as such, is available only as an affirmative defense, unless such consent or acquiescence is shown by the bill. In *Bowerman* v. *Hamner, supra,* it was sought to hold Bowerman, as director of a national bank, for negligence in not attending meetings and assisting in supervising the affairs of the bank. Bowerman lived two hundred miles from the bank, and it was urged that as he was not a resident of the city in which the bank was located he should not be held to the same degree of accountability as resident directors. The evidence in that case showed that though Bowerman was a director in the bank he had not for five and one-half years attended directors' meetings. The court in that case said: "That ordinarily prudent and diligent men accepting election to membership in a bank directorate would not willfully absent themselves from directors' meetings for years together, as Bowerman did, can not be doubted; that a director who never makes or causes to be made any examination whatever of the books or papers

of the bank to determine its condition and the way in which it is being conducted does not exercise ordinary care and prudence in the management of the affairs of the bank is equally clear; and that Bowerman, when guilty of negligence in both of these respects, did not exercise the diligence which prudent men would usually exercise in ascertaining the condition of the business of the bank or a reasonable control and supervision over its affairs and officers is likewise beyond discussion. He cannot be shielded from lia-. bility because of want of knowledge of wrongdoing on his part, since that ignorance was the result of gross inattention in the discharge of his voluntarily assumed and sworn duty. * * * He was a man of such importance and reputation that the use of his name must have contributed to securing the confidence of the community and of depositors for the bank, and it would be a reproach to the law to permit his residence at a distance from the location of the bank,—a condition which existed from the time he first assumed the office of director,—to serve as an excuse for his utter abdication of his common law responsibility for the conduct of its affairs and for the flagrant violation of his oath of office when it resulted in loss to others." In *Briggs* v. *Spaulding,* 141 U. S. 132, the court said: "Directors must exercise ordinary care and prudence in the administration of the affairs of the bank, and this includes something more than officiating as figureheads. They are entitled under the law to commit the bank's business, as defined, to their duly authorized officers, but this does not absolve them from the duty of reasonable supervision; nor ought they be permitted to be shielded from liability because of want of knowledge of wrongdoing, if such ignorance is the result of gross inattention."

In *Chicago Title and Trust Co.* v. *Munday, supra,* it was held that the director of a bank "is bound to the observance of ordinary care and diligence, and is hence liable for injury resulting from the non-observance, where such non-

observance is due to the negligence of such director."
Appellant here should have the right to a hearing on his
charges of negligence against Billings.

Mr. JUSTICE DUNCAN, also dissenting.