RUTH B. HALL, Plaintiff-Appellee, *v.* HUMPHREY-LAKE CORPORATION *et al.*, Defendants-Appellants.

(No. 59858;

First District (3rd Division)—June 5, 1975.

958

Harry G. Fins, of Chicago, for appellants.

Nat M. Kahn, Richard G. Kany and Barry Feinberg, all of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Decker Hall was a shareholder in the Humphrey-Lake Corporation, an operator of laundry and dry-cleaning stores. In July 1969 he agreed to sell his 98 shares of stock to the company for $36,000—$28,000 in principal and $8,000 in interest—payable in 48 monthly installments of $750 each. The contract was signed by Hall and by the company's vice-president, the defendant Whitfield Hughes.

The company complied with its obligations for 17 consecutive months —making payments totaling $12,750—but made none after December 1, 1970. In April 1971 Hall died and his widow, the plaintiff Ruth Hall, sought payment of $23,250, the balance due under the contract, first as the administrator of his estate and then as the assignee of the claim—an assignment approved by the Probate Division of the Circuit Court.

No further payments were made and, in February 1973, Mrs. Hall filed a complaint against the company. In July 1973 she filed an amended complaint and named Hughes, individually, as a co-defendant. In August 1973 she assigned, with the consent of the Probate Court, a 50-percent interest in the Hall-Humphrey-Lake-Hughes suit to Gertrude White, a creditor of her husband's estate.

The amended complaint was for the sum of $14,750 and was based on an alleged agreement made in February 1971, to reduce the balance from $23,500 to $14,750 on condition that Hughes would personally guarantee payment of the lesser amount. Copies of the 1969 contract and the purported agreement of 1971 were appended to the pleading. The latter exhibit, which was found among Decker Hall's papers after his death, was signed by Hughes but not by Hall.

In their answer to the amended complaint the defendants admitted execution of the 1969 contract and payment of only $12,750 toward the purchase price of Hall's stock, but asserted that the corporation's obligations under the contract were terminated,

> "* * * by reason of failure of consideration in the underlying subject matter in that the business of the corporation changed dramatically, unexpectedly and adversely shortly after the agreement was signed, without fault on the part of either party."

The answer denied there was a supplementary agreement. It stated that a guarantee in exchange for a lower sum had been proposed by Hughes and another stockholder, James Borne (now deceased), but had not been accepted by Hall. An affidavit filed by Hughes elaborated on this denial. It explained that the amendment was prepared by his own attorneys, without the knowledge or consent of Hall, in order to present him a modified proposal reduced to writing and ready for his signature, but that Hall had rejected the proposition.

Mrs. Hall moved for judgment on the pleadings, asking $23,500 from Humphrey-Lake under the original contract for $14,750 from Humphrey-Lake and Hughes pursuant to the amended agreement. The trial court awarded her $14,750 against each defendant. The court found that "the allegations and contents of the two exhibits attached to plaintiff's pleadings show liability as a matter of law and control over any general allegations of defendant corporation's answer." The defendants appealed from both judgments.

■■ The plaintiff concedes that her husband refused to sign the proposed amendment to the original contract and that the judgment against Hughes must be reversed. Further, the assignment to her of claims in her husband's estate was restricted to "* * * claims of this estate against Humphrey-Lake Corporation and Hughes Equipment Company * * *" and made no mention of claims against Hughes personally. Mrs. Hall therefore acquired no right as an individual to enforce the guarantee provision of the amended agreement.

The remaining defendant has mounted a multifarious attack on the exhibits relied upon by the court. We consider three of the points asserted: first, the purported amendment did not in fact memorialize any agreement by the parties to modify their first contract; second, since the amendment was the sole instrument upon which judgment was predicated, this court may not look to the original agreement to justify affirmance; third, even if the original contract is considered, no balance is due on it because the agreed price was based upon a mutual mistake as to the value of the stock sold to Hall.

■■ In support of its first contention, Humphrey-Lake proposes that "[w]here a contract is to be signed by more than one person and one of said persons does sign and the other does not sign it, the contract does not become binding on the one who signed it." While the plaintiff's brief did not respond to the point, we are forced to note that if such a rule exists it finds no support in the authorities to which the defendant's appellate counsel has referred us. Those cases applied the principle that in order to bind one or more coparties to their joint undertaking, they must all have signed the agreement. For example, a lessee cannot enforce a

lease signed by only one of the two colessors named in the instrument. (*Santelli v. Lev* (1927), 324 Ill. 454, 155 N.E. 278.) Similarly, a contract for the conveyance of real property by a husband and wife does not bind the husband who signs unless his wife has also signed. (*Jackson v. Torrence* (1890), 83 Cal. 521, 23 P. 695.) These authorities have no relevance to the present issue of the probative value of the amending instrument and, since the instrument was signed by all the parties sought to be bound, it was, at the time the trial court considered it, a sufficient memorandum to comply with the requirements of the Statute of Frauds. Ill. Rev. Stat. 1971, ch. 59, par. 1; *First Presbyterian Church v. Swanson* (1902), 100 Ill.App. 39.

However, a writing sufficient to comply with the requirements of the Statute of Frauds is neither necessarily nor presumptively a valid contract (3 Williston on Contracts § 448 (3rd ed. 1961)), but only evidence of one. The instrument does not conclusively prove its own character and validity. In every case it is a question of fact whether the parties adopted a writing as their agreement and it may always be shown by parol that a writing, however complete on its face, was never executed or delivered as a contract. 4 Williston on Contracts § 634 (3rd ed. 1961); 3 Corbin on Contracts § 577 (1960); *Kilcoin v. Ortell* (1922), 302 Ill. 531, 135 N.E. 16.

■■ The answering allegation by the defendants, that this document was only a proposal drawn up and signed by Hughes and Borne but rejected by Hall, raised a question of fact as to the validity of the amending agreement, rendering it error for the court to grant judgment on the pleadings based upon that exhibit. All well-pleaded facts and all fair inferences which can be drawn from the opposing litigant's pleadings are taken as admitted by a party who moves for judgment on the pleadings. *Rhodes v. Rhodes* (1967)), 82 Ill.App.2d 435, 225 N.E.2d 802.

■■ That the averments by the defendants which contravened the written exhibit might not be proved at trial did not alter the appropriate course of action for the court at this early stage of the proceedings. Despite the uncertainty imparted to the document by Hall's failure to sign it during the time he held it before his death, the court was not without reasons for believing that the amendment had been adopted by Hall as a valid contract. The allegation by Hughes that Hall orally rejected the company's proposal in a private conversation with him was self-serving, incapable of corroboration by the deceased Borne, and also subject to suppression if offered as testimony in a trial, for violation of the dead man's act. (Ill. Rev. Stat. 1971, ch. 51, par. 2; *Dunlop v. Lamb* (1899), 182 Ill. 319, 55 N.E. 354.) But even a belief as to the possible validity of the document did not justify reliance upon it to award judgment on the

pleadings, since to do so entailed speculation as to the means by which the allegations of the defendants could or would be supported at trial.

The insufficiency of this one exhibit to uphold the judgment on the pleadings does not, in the circumstances of this case, vitiate the power of the other exhibit, the original contract, to sustain the ruling of the court. Humphrey-Lake is mistaken in its contentions that the amending agreement supplied the sole foundation for the judgment and that the 1969 contract was terminated because of a mutual mistake in the execution. To support the first of these arguments, the company theorizes that by relying on the original contract to justify the judgment for the lesser amount due under the later amendment, Mrs. Hall has in some way contradicted herself and is trying her case in the appellate court on a theory different from the one she pursued in the circuit court.

■■ The theory upon which a case is tried cannot be changed upon review. This rule applies to both the successful and the unsuccessful parties to the suit. (*Consoer, Townsend & Associates v. Addis* (1962), 37 Ill.App.2d 105, 185 N.E.2d 97.) However, unlike an appellant, for whom the scope of review is limited by his assignment of errors, an appellee may sustain the trial court decree by any argument based upon issues appearing in the record. (*Becker v. Billings* (1922), 304 Ill. 190, 136 N.E. 581; *In re Estate of Leichtenberg* (1956), 7 Ill.2d 545, 131 N.E.2d 487.) The reasons assigned by the trial judge are immaterial if his decision was correct. (*Cady v. Hartford Fire Insurance Co.* (1965), 56 Ill.App.2d 429, 206 N.E.2d 535.) The rule that where an amended complaint is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be part of the record for most purposes (*Precision Extrusions, Inc. v. Stewart* (1962), 36 Ill.App.2d 30, 183 N.E.2d 547) does not apply in the present situation. The validity of the original contract was placed in issue by the plaintiff's amended complaint. The 1969 agreement was pleaded and a copy of it was attached to the amended complaint; the defendants' answer admitted the execution of the original agreement; the plaintiff's alternative prayer in her motion for judgment on the pleadings sought payment from the corporation on this first contract if no liability obtained under the amendment. In entering judgment the court held that both documents showed liability as a matter of law.

■■ We concur in the trial court's opinion. The original contract establishes the corporate defendant's liability and, even as explained in the defendants' answer and affidavit, the proposed amendment was a further admission of the debt. Taken together the plaintiff's exhibits are adequate to support the judgment. The fact that judgment was entered for the lesser balance due under the purported amended agreement does not contradict the implied finding by the court that the original contract

was valid. The defendant should not complain that the balance of $23,250 owed by it upon the original contract was reduced to $14,750, and the plaintiff, having reduced her claim to the latter figure, is in no position to protest.

Humphrey-Lake next contends that its obligation under the original contract was in any event ended, because both parties entered that pact in reliance upon a mutual mistake as to the value of the shares sold by Hall. We are told that since this is an affirmative defense supportable by parol it stood admitted by the plaintiff's failure to file a reply.

■■■ A failure to reply admits only well-pleaded facts in the answer. It in no way ratifies the legal conclusion drawn by the pleader. (*Bratkovich v. Bratkovich* (1962), 34 Ill.App.2d 122, 180 N.E.2d 716.) Mutual mistake is a term of legal conclusion which, if it had appeared in the defendant's answer, would not have bound the plaintiff as an admission for lack of a reply, because the answer alleged no facts to support the conclusion. The defendants averred only "that the business of the corporation changed dramatically, unexpectedly and adversely shortly after the agreement was signed, without fault on the part of either party." The only mistake discernible from this vague recitation is the possible erroneous belief by Humphrey-Lake that its business would continue to prosper. The pleading was insufficiently precise to make out a defense under any name. Moreover, it termed the decline in the company's fortunes a "failure of consideration," not a matter of mutual mistake. Humphrey-Lake has, thus, changed its theory of defense before this court and is guilty of the error it charges to the plaintiff. *Consoer, Townsend & Associates v. Addis.*

■■ We cannot help but note that the uncontroverted facts in the pleadings and exhibits are incompatible with the company's attempted defense. The company paid 17 monthly installments of $750 under the contract before breaching it. Also, Hughes wrote to Decker Hall in February 1970 to persuade Hall to accept the proposed reduction in price. In his letter Hughes made the following admission:

> "I think it is only fair to advise you that you are not bound to accept this new contract. The existing agreement is valid and is binding on the corporation."

So, 19 months after entering the contract, Hughes had not yet detected the "mutual mistake" upon which it was founded, nor had he discerned a failure of consideration. When examined in the light of these admissions, the so-called affirmative defense is seen to be either false or frivolous, and it was properly disregarded by the court. *Winger v. Richards-Wilcox Manufacturing Co.* (1961), 33 Ill.App.2d 115, 178 N.E.2d 659.

■■ Among the procedural objections raised by Humphrey-Lake are

those concerning the status of Gertrude White. The allegation in Mrs. Hall's complaint that she alone had been assigned this claim was true when made. However, while the action was pending, Miss White was assigned a half share in the claim. After the court ordered judgment for Mrs. Hall on the pleadings, the defendants brought the White interest to its attention, but the court elected not to modify its order. Humphrey-Lake contends that by virtue of her acquired interest Miss White had become a necessary party-plaintiff and in her absence no judgment should have been rendered. Where an objection of nonjoinder of a necessary party is first raised after judgment, it will be denied unless such denial will have the effect of depriving the party omitted of material rights without a hearing (*Boddiker v. McPartlin* (1942), 379 Ill. 567, 41 N.E.2d 756,) or unless the interest of the omitted party in the subject matter of the suit is so interconnected with the interests of the other parties that his presence is an absolute necessity. (*Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 52 N.E.2d 1000; *Ebaloy, Inc., v. Square Deal Plumbing & Heating Supply House, Inc.* (1960), 27 Ill.App.2d 36, 169 N.E.2d 527.) There is no dispute between Miss White and Mrs. Hall over apportionment of the proceeds of this claim. Both are bound by the decree of the probate division of the circuit court, a copy of which is a part of this record. Miss White's partial ownership of the claim has raised no new issues on the merits. Since her interests received actual protection there was no lack of necessary parties.

■■ Humphrey-Lake is protected as well. While parties not before the court are usually not bound by a decree (*Filosa v. Pecora* (1974), 18 Ill. App.3d 123, 309 N.E.2d 356), persons who participate in an action through their attorneys may be bound by the judgment even though not formal parties. (*Ward v. Clendenning* (1910), 245 Ill. 206, 91 N.E. 1028.) Miss White has participated in the prosecution of this lawsuit through her attorney who was retained as cocounsel in the litigation. Although he did not file a formal appearance in the trial court, his presence before the bench with Mrs. Hall's attorney was acknowledged in the defendants' motion to modify the judgment. He also coauthored the appellee's brief in this court. Under these circumstances Miss White has waived any potential claim that this judgment did not adjudicate her interests. Further, she is bound to the judgment by reason of the privity between herself and Mrs. Hall with respect to the subject matter of this action. (See *Pritchett v. Steinker Trucking Co.* (1967), 85 Ill.App.2d 340, 230 N.E.2d 68, *rev'd on other grounds*, 40 Ill.2d 510, 240 N.E.2d 684.) We therefore find it unnecessary to exercise our powers of amendment to name her a party (Ill. Rev. Stat. 1971, ch. 110A, par. 366(a)(2)), and we have denied the plaintiff's motion requesting that we do so.

Humphrey-Lake advances one final argument in its reply brief: that if the court makes Gertrude White a joint judgment creditor or relies on the 1969 agreement to sustain the judgment, it will violate the constitutional freedom of contract of the defendants and their surety on the appeal bond. The argument is grounded on the premise that these persons entered the bonding arrangement in reliance on counsel's assurances that the facts of record required reversal. This contention is devoid of merit. Its acceptance would mean that counsel could bind the appellate court to his own interpretation of the record by making representations to the bond surety. If his version were not then accepted by the court, the appeal bond would be unenforceable. Furthermore, we need not consider contentions made for the first time in a reply brief. *Maca v. Rock Island-Moline City Lines, Inc.* (1964), 47 Ill.App.2d 31, 197 N.E.2d 463.

The judgment against Whitfield G. Hughes, Jr., is reversed; the judgment against the Humphrey-Lake Corporation is affirmed.

Affirmed in part; reversed in part.

McNAMARA and MEJDA, JJ., concur.