JEFFREY HUBER, Plaintiff-Petitioner, *v.* JOHNNIE R. WATTS, Indiv. and d/b/a Johnnie's Foundations *et al.,* Defendants-Respondents.

Third District   No. 82—412

Opinion filed December 8, 1982.

Nat P. Ozmon, Laird M. Ozmon, and Dario A. Giribaldi, all of Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago, for appellant.

George C. Hupp, Sr., and Gale F. Murrin, both of Hupp, Irion & Hupp, P.C., of Ottawa, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

This is an appeal by the plaintiff Huber from an order of the circuit court of La Salle County which granted the defendants a new trial from a verdict of a jury.

The plaintiff, a cement truck driver, was injured on October 2, 1978, while delivering a load of concrete to a subdivision near Aurora for the defendant, Johnnie R. Watts individually and d/b/a Johnnie's Foundations. The injury occurred when the plaintiff was attempting to pour the ready-mixed cement from a chute attached to his truck. When he arrived at the job site the plaintiff backed his truck into position and while doing so noticed that the rear main chute which was lashed at a right angle to the back of his truck was elevating itself, which indicated a malfunction of the hydraulic system. After stopping the truck the plaintiff went to the back of the truck for the purpose of getting the main chute down or lower so it would pour concrete. An employee of the defendant Johnnie Watts, one Manley "Bud" Olson (also a defendant in this case), unlatched the main chute of the truck so that it was extending straight out from the rear of the vehicle. The plaintiff, being at the rear of the vehicle, locked the main chute into the straight out position and attempted to operate the electric-hydraulic switch on the left rear of the truck, which should have lowered the chute, but in this instance the switch failed to bring about the desired result. The evidence in this case established that when such a situation occurred it was standard and accepted procedure for the driver to hold the end of the main chute with his right hand, thereby placing weight on the chute, while again operating the electric-hydraulic switch with his left hand. All of this activity consumed one or two minutes of time. With the plaintiff's hand on the main chute for the purpose of imposing weight upon the same, the defendant Olson actuated a secondary or "flop-over" chute by pulling it so

that it came down upon the plaintiff's hand, which was severely injured.

The evidence established that the defendant had a clear view of the plaintiff during the operations concerning the problems with the main chute. During the trial the truck involved in the accident was brought to the courthouse and the jury was given a demonstration of the maneuvering of the chute which enabled them to see just what view the defendant Olson would have had of the plaintiff. Also during the trial it was established that there was a "sticker" on the driver's side of the chute stating "Warning. Keep out from under chutes at all times. Keep fingers clear of pinch points." The plaintiff's hand was injured in a pinch point area.

The trial of this case was conducted pursuant to our relatively new comparative negligence doctrine. The jury returned a verdict setting damages at $325,000 and apportioned fault at 10% to the plaintiff and 90% to the defendants. The trial court granted a motion for a new trial on the grounds that the allocation of fault was disproportionate and it (the allocation of fault) was manifestly contrary to the evidence. In the trial court's written correspondence granting a new trial the court took no exception as to the amount of the verdict. If necessary, additional evidence adduced during the trial of this case will be set forth if the same becomes pertinent to the determination of this appeal.

The paramount question presented to this court is whether the trial court was correct in granting a new trial to the defendants.

In addressing this question, attention is first directed to assignments of error which the defendants contend occurred during the trial of this case and which would compel the granting of a new trial. Plaintiff argues that since the trial court granted a new trial solely on the grounds of a disproportionate allocation of fault by the jury and that since the defendants failed to ask for a rule by the trial court on other matters, *i.e.*, amount of verdict, closing argument statements, there has been a waiver by the defendants of such alleged errors. We disagree with this argument of the plaintiff. The matters assigned as errors by the defendants were included in defendants' post-trial motion for a new trial and were argued at the hearing on such motion. Though an appellant who brings a case to an appellate court for review must indicate by his assignment of errors the errors of which he complains, and his argument must be confined to the errors so assigned, an appellee is subject to no such requirement. The appellee can sustain the decree appealed from by any argument and on any basis appearing in the record which shows that the trial court's decree

is right. See *Becker v. Billings* (1922), 304 Ill. 190, 136 N.E. 581, and *Hall v. Humphrey-Lake Corp.* (1975), 29 Ill. App. 3d 956, 331 N.E.2d 365.

The defendants contend that certain remarks of counsel for the plaintiff during final argument to the jury misstated the law and were so prejudicial as to deny the defendant a fair trial. The complained-of remarks by counsel for the plaintiff were the result of his repeated invitations to the jury to equate damages with the sum of money that an injured party would offer to not to have sustained the injury in question. During oral argument before this court counsel for the plaintiff attempted to minimize the effect of such remarks by claiming that they consumed but a few minutes of time in a lengthy trial and that the trial court directed the jury to disregard the remarks and properly instructed the jury as to the law which should be followed in computing damages. In the light of such argument the determination of this issue will be best served by setting forth in full the complained-of remarks and the colloquy which ensued between court and counsel for all parties:

"MR. OZMAN: What would a reasonable person give not to have an injury with nature, extent and duration?

MR. HUPP: Now, Your Honor, I'm objecting to that statement.

MR. OZMAN: I think it's totally proper what a reasonable man would offer.

THE COURT: Yes, Proceed.

MR. OZMAN: What would the reasonable man give to be free, not have that type of problem? A hundred thousand dollars from the day of this occurrence for the next forty-six years?

MR. OZMAN: What would someone give to face that kind of situation, have these kinds of things taken away? Would a reasonable man say, give me $200,000.00 and I'll jump and put myself in Jeffrey's place?

MR. HUPP: I'm going to object to that.

THE COURT: Yes, I think you're going too far.

MR. OZMAN: Would a reasonable man give $200,000.00 to have this problem in the future and have these types of problems now?

MR. HUPP: I'll object to that and ask the jury to disregard it and this is not the test to have this removed.

MR. OZMAN: That's not what I said, I said the reasonable man.

THE COURT: I sustained the objection. You've gone too far.

MR. OZMAN: I doubt that the reasonable person would take that $200,000.

MR. HUPP: Again, Your Honor, I'm going to object to that.

THE COURT: Sustained. Strike that out.

MR. HUPP: And ask that the jury be instructed to totally disregard that.

MR. OZMAN: I have an absolute right to comment on what the reasonable man would give, Your Honor.

THE COURT: You do not have a right, as I understand the law, to auction off the amount which people might accept for assuming this responsibility.

MR. OZMAN: For the loss of advancement, the losses of activity, the loss of recreation, from the date of this occurrence until the year 2027, when we know what's happening to money now—what's happening to money now? What's the dollar like over the last, just the last ten years? What's it going to be like in 2027?

MR. HUPP: Again, I'm going to have to object to this argument.

THE COURT: There's no evidence in the record of inflation or the value of the dollar.

MR. OZMAN: I think Your Honor can take judicial notice that inflation is a definite part of society.

THE COURT: No, I can't do that.

MR. OZMAN: I think a fair—

MR. HUPP: Again, Your Honor, I'm going to have to ask the jury to disregard this argument.

THE COURT: The Court is going to instruct the jury that if you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of these elements of damages which have been proved by the evidence to have resulted from the negligence of the defendant. This is the rule that you will follow in deciding what the amount of damages will be.

MR. OZMAN: A fair and reasonable sum to have this hand; is there such a thing? Would a person say, if you give me $150,000.00, I'll have my hand smashed?

MR. HUPP: I'm going to object to this again, Your Honor, and ask that the Court admonish Counsel and instruct

this jury that they are not to consider this type of an argument.

THE COURT: They are not to consider this. You are to consider in fixing these figures what I just read to you. That is the law that you are to apply and not what Mr. Ozman is now saying."

All of the foregoing colloquy was in the presence of the jury. In spite of the trial court's efforts counsel for the plaintiff was not to be deterred in his persistent efforts to misstate the law. Six times counsel invited the jurors to assume that they were the plaintiff and asked them to decide how much monetary consideration they would pay not to suffer the injury that was suffered by the plaintiff. At the conclusion of the plaintiff's argument to the jury yet before the jury a further colloquy ensued between counsel for the parties. We will not set forth verbatim these lengthy remarks; however, their effect was to accentuate the prejudicial effect of the preceding remarks made by counsel for plaintiff. The complained-of remarks were not the type which could be classified as isolated and inadvertent, but instead show a persistent effort to prejudice the jury by misstating the law in such a manner as to appeal to the sympathy of the jury. It would be sheer speculation to conclude that the trial court's admonishments to the jury concerning the remarks eliminated their prejudicial effect. A situation quite similar to that present in the instant case occurred in the case of *Brant v. Wabash R.R. Co.* (1961), 31 Ill. App. 2d 337, 176 N.E.2d 13. In *Brant* the reviewing court held that such remarks deprived the defendant of a fair trial, and we reach the same conclusion in the instant case.

■ Having determined that the defendant is entitled to a new trial for errors occurring during the course of the trial, we need not consider whether the trial court was correct in granting a new trial on the grounds that the jury erred in disproportionately allocating fault between the parties. Our determination also eliminates the necessity of considering other issues raised in this appeal.

For the reasons set forth the judgment of the circuit court of La Salle County granting a new trial is affirmed.

Affirmed.

ALLOY and STOUDER, JJ., concur.