Consoer, Townsend and Associates, a Copartnership, Plaintiff-Appellant, v. Irving M. Addis and Ira Salzman, Defendants-Appellees.

Gen. No. 48,542.

First District, Third Division.

July 9, 1962.

Alphonse Cerza, of Chicago, for appellant.

Sidney B. Baker, of Chicago (Louis A. Rosenthal, of counsel, of Chicago), for appellee, Irving M. Addis.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiff, Consoer, Townsend and Associates, is an engineering firm and the defendants, Irving M. Addis and Ira Salzman, were partners in an architectural firm operating under the name of Addis and

106

Associates. The plaintiff performed engineering services for which it was not fully paid and this action was brought for the balance due. The case was tried without a jury and the court found for the defendants.

The controversy centers around a purported contract between the parties which was attached as an exhibit to the complaint. Ira Salzman did not answer the complaint. The answer of Irving Addis acknowledged that he signed the contract but stated that he did not do so on his own behalf or on behalf of his partnership. He defended on the ground that he signed as agent for a William Ruth, a disclosed principal, and that all the work under the contract was done for Ruth and all payments were made by him.

William Ruth visited the Consoer offices, indicated that he was a representative of Addis and Associates and solicited the firm's services for a proposed twenty-acre subdivision in Mount Prospect. Consoer later prepared a proposal which was addressed to: "Mr. William Ruth, c/o Addis & Associates, . . . Chicago, Illinois." The salutation was "Dear Sir:" and the proposal stated that if it was accepted it would "constitute a contract between us." The letter concluded by requesting a $1,000.00 retainer fee. Below the signature of the Consoer firm an acceptance form was provided.

The contract was returned to Consoer with the form filled out as follows:

"Accepted:

By: Addis and Associates

Title: Partner

Attest: Irving M. Addis

Date: 31 Aug. 1956."

Consoer received a check for $1,000 from Addis and Associates, opened an account on its books in that

107

name and proceeded to perform its part of the contract. Upon completion of the first phase, the preparation of plans and specifications for the installation of sewers, streets and sidewalks, it rendered a bill for $5,012.06. A check was received from Addis and Associates, accompanied by a note asking that the bill be receipted and returned to Addis. The receipt was not returned because the check was dishonored by the bank upon which it was drawn. The bill was subsequently paid but whether it was paid by Addis and Associates or Ruth is not clear. All Consoer bills were made out in the name of Addis and Associates. In the beginning they were directed to Ruth at the Addis office; later they were sent to Ruth at his home.

Throughout the execution of the contract, which took two to three years, the members of the Consoer firm dealt with Ruth. They neither saw Irving Addis nor knew that Ira Salzman was his partner until after this suit was started. Ruth was the director of the project and, although ownership appeared to be in a land trust, there was evidence that he was the real owner, and the project was named "Joan Ruth's Wa-Pella Gardens."

Three theories of defense have developed in this case: (1) Addis and Associates signed the contract as agents for Ruth, (2) the contract was with Addis and Associates but Ruth took it over with the consent of Addis and Consoer and (3) there was no contract at all because it was not accepted by the party to whom it was offered. The first of these mutually contradictory theories was the only one raised in the pleadings and it was the only one upon which the case was tried. The second was injected into the defendants' final argument and was adopted by the trial judge as the basis for his decision. The third was also initially introduced in the final argument; it is relied upon

108

heavily in this appeal and is termed "the heart and gist of the whole case."

■ ■ Neither the second nor the third theories will be considered at length. The second, although in direct opposition to the theory upon which the case was tried, has some evidence to support it and has the added weight of the court's judgment. However, the Addis' answer did not set up this defense and no motion to amend was made either before or after judgment. Ill Rev Stats (1959) c 110, § 46(1)(3). Novation of a contract is a good defense but it must be pleaded by the party claiming to be the beneficiary of the novation. 6 Corbin on Contracts, sec 1299. Likewise, the third theory was never included in the answer as an alternative defense. It is in conflict with the novation theory, for if there were no contract there could not be a novation. It also conflicts with the first theory, for the defense of agency admits the existence and validity of the contract.

■ The theory upon which a case is tried cannot be changed upon review. City of Chicago v. James E. Mulligan Enterprises, 27 Ill App2d 481, 170 NE2d 13. This rule applies to both the successful and the unsuccessful parties to the suit. Continental Illinois Nat. Bank & Trust Co. of Chicago v. National Casket Co., 27 Ill App2d 447, 169 NE2d 853. It is also a rule that a party will not be permitted to argue on appeal a defense not interposed by his answer. Bittner v. Field, 354 Ill 215, 188 NE 342; Dempster v. New York Cent. R. Co., 2 Ill App2d 47, 118 NE2d 56; Chicago Title & Trust Co. v. Hoffberg, 293 Ill App 290, 12 NE2d 230; Graf v. Perlman, 209 Ill App 172. The fact that certain evidence lends support to the defense does not mitigate the force of this rule (Hill v. Siffermann, 230 Ill 19, 82 NE 338; Chicago, R. I. & P. R. Co. v. The People, 222 Ill 427, 78 NE 790) and asserting a new defense

in final argument does not do so. While an appellee is not as limited in the scope of review as is an appellant, nevertheless, the review cannot go beyond the issues appearing in the record. In re Estate of Leichtenberg, 7 Ill2d 545, 131 NE2d 487. The issues are determined from the pleadings and the evidence. To have evidence without pleading an issue is just as fatal as pleading an issue and not supporting it with evidence. Both are essential and each must conform to the other. Burke v. Burke, 12 Ill2d 483, 147 NE2d 373; Neitzke v. Neitzke, 15 Ill App2d 473, 146 NE2d 708. For these reasons our opinion will be restricted to the one defense raised in the answer and to the one theory upon which the case was tried.

 To support the defense of agency, Addis relied upon the proposal having been addressed to Ruth, upon an exhibit designated as #1, which was attached to his answer, and to other documents introduced in evidence. Addis did not testify nor did anyone else in his behalf.

The proposal being addressed to "Mr. William Ruth, c/o Addis & Associates" and the salutation "Dear Sir" may be of probative value in showing that the contract was intended for Ruth, but they are of no value in proving that Addis was Ruth's agent. Neither Ruth's nor Addis' name was mentioned in the body of the proposal; whether it was intended for Ruth or Addis cannot be determined from its content and the Addis' acceptance did not in form or substance suggest that an agency was involved.

Exhibit #1 was a letter from Consoer to Ruth (a copy was sent to Addis and Associates) dated November 14, 1958. It was sent in response to two letters Consoer had received from Ruth which objected to bills being sent him and which stated that he had nothing further to do with the project. The Consoer letter expressed surprise, said that Ruth's past actions

indicated that he had personally taken over the contract, that he had incurred obligations, that bills had been sent to him at his request and that the firm would continue to look to him for payment.

The exhibit does not support the defense of agency. Indeed, it refutes that defense. It is replete with expressions to the effect that the contract was with Addis but that Ruth had assumed joint responsibility for it. The following are typical: "We have rendered engineering services on this project since 1956 under the terms of our contract with Addis and Associates. . . ."; "We have no contract with . . . or any other firm . . . other than Addis and Associates."; "Although our contract, technically, is with Addis and Associates, invoices, correspondence and related matters have been sent directly to you at your request."; ". . . your past actions and commitments indicate that you, personally, have taken over this contract." and, ". . . you had apparently assumed the obligation of our contract with Addis and Associates . . ."

Three other defendants' exhibits were a contract and letters written by Consoer in February and April 1957. The contract, as drawn, was between Addis & Associates, owner, and Skokie Valley Asphalt Co. for the construction by the latter of pavements, curbs, gutters and sidewalks in the subdivision. Consoer's February letter to the company said: "We are transmitting herewith in accordance with the request of Mr. William Ruth, who is associated with Addis & Associates in developing the subject project, three copies of a contract. . . . Please execute all three copies and forward same directly to Mr. Ruth for his execution." The asphalt company returned the contract unsigned. In April 1957 Consoer wrote Ruth that in accordance with his request the contract had been revised to name him as the owner. We fail to see where these exhibits prove that Addis and Associates

111

were acting as agents for Ruth. If the exhibits have any bearing upon the issue of agency it is to the opposite effect; their implication is that Consoer regarded Ruth as the agent of Addis and Associates. On their face they show that Consoer considered Ruth one of the associates of the Addis firm and originally believed Addis and Associates to be the owners of the subdivision.

The rest of the defendants' exhibits are of no special significance. The burden of supporting the affirmative defense was upon the defendants but we find no evidence in the record supporting the theory that when the contract was signed Addis and Associates were acting as agents for Ruth with the knowledge of Consoer. On the other hand, the evidence is that Consoer had reason to believe that Ruth, in his negotiations, was acting for Addis and Associates. The evidence further shows that Addis and Associates accepted the Consoer proposal, signed the contract, paid a $1,000 retainer fee and issued their check for $5,012.06 in payment for Consoer's preliminary services.

The judgment of the County Court is reversed and the cause is remanded with directions to enter judgment for the plaintiff.

Reversed and remanded with directions.

SCHWARTZ and McCORMICK, JJ., concur.