MEDI-FI TWO INCORPORATED, Plaintiff-Appellant, v. PATRICK RIORDAN, Defendant-Appellee.

First District (2nd Division)    No. 78-1016

Opinion filed April 10, 1979.—Rehearing denied May 16, 1979.

Howard M. Turner, of Chicago, for appellant.

Jared Kelner, of Lake Forest, for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

The issue presented to us for review is whether plaintiff Medi-Fi Two Incorporated sustained its burden of proof in a contract action against defendant Dr. Patrick Riordan who allegedly breached an agreement between the parties.

The cause was tried before the court without a jury upon the complaint and a counterclaim resulting in judgment for defendant-counterplaintiff on the complaint and for plaintiff-counterdefendant on the counterclaim on September 28, 1977. Plaintiff filed a post-trial motion on October 4, 1977, which was denied on April 19, 1978.

By amended notice of appeal of May 17, 1978, plaintiff seeks review of the September 28, 1977, order finding the issues for defendant on the complaint, and of the order of April 19, 1978, vacating an earlier summary judgment for plaintiff entered on June 3, 1977, finding the issues in favor of defendant and against plaintiff with respect to the complaint and answer. Defendant has filed no appellee's brief in this cause. We nevertheless consider the appeal on its merits. (*First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 131, 345 N.E.2d 493; *Williams v. Dunas* (1976), 40 Ill. App. 3d 782, 352 N.E.2d 266.) The promissory notes upon which plaintiff bases his appeal, though admitted into evidence, were not a ground of recovery in the complaint or at trial; absent other factors, our consideration of the issue raised by the notes might well be precluded. (*Ward v. Ondrejka* (1972), 5 Ill. App. 3d 1068, 1071, 284 N.E.2d 470; *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89; *Consoer, Townsend & Associates v. Addis* (1962), 37 Ill. App. 2d 105, 185 N.E.2d 97.) To the end that " * * * the rights of parties litigant * * * be adjudicated on their merits" (*Fleshner v. Copeland* (1958), 13 Ill. 2d 72, 77, 147 N.E.2d 329, 333), however, we proceed to a substantive treatment of the instant appeal.

For the reasons hereinafter stated we affirm.

The contract between the parties, attached as an exhibit to the complaint, provided that plaintiff would furnish to defendant certain administrative and financial services with respect to accounts receivable owing to defendant from the Illinois Department of Public Aid (hereinafter "Department"). Plaintiff would take defendant's Department accounts, set them up in a schedule listing the net cash value of the charges in each account and return the schedule to defendant. Plaintiff would advance 91 percent of the amount of each such account to defendant, for which defendant signed separate promissory notes prepared by plaintiff. As compensation plaintiff was to receive the remaining nine percent of the estimated net cash value of each account against which it loaned the money. These and future accounts receivable were assigned by defendant to plaintiff as security for the obligations thereby incurred. Defendant further agreed to repay plaintiff for any amount rejected by the Department, or the difference between partial payment by the Department and the estimated cash value of the account, or to repay in full within six months any part of the estimated net cash

value not paid for by the Department. Payments on the accounts receivable were to be made directly from the Department to plaintiff's chosen address, Post Office Box 92. Plaintiff was authorized to endorse defendant's name on each check, deposit it, and credit defendant's account; no provision was made for payment to plaintiff by any other means except directly from defendant in the event the Department failed to pay on an account. Defendant was to receive any surplus. Any warrant from the Department received by defendant directly was to be turned over to plaintiff at once without being cashed or deposited.

Between February 20, 1976, and July 30, 1976, plaintiff made 14 advances to defendant pursuant to the agreement, totalling $92,776.94. Each time an advance was made defendant executed and delivered to plaintiff a promissory note payable to plaintiff's order, in accordance with the required procedures. These notes totalled $102,037.85.

During March and April of 1976, however, certain warrants issued by the Department, totalling $25,130 in payment of defendant's accounts receivable in that amount, somehow came into possession of a finance company with whom defendant had previously done business, Farns[1] Associates, Inc. (hereinafter "Farns"), although showing defendant as payee and addressed to him at plaintiff's Post Office Box 92. These warrants were deposited by Farns in its own bank account, without having been endorsed by defendant, as shown by photostatic copies of the warrants received in evidence. No connection between Farns and plaintiff appears in the record, nor does any evidence reveal how Farns came into possession of these funds, except plaintiff's conjecture that they were "misdirected." Of the $25,130 it received, Farns paid directly to plaintiff the sum of $17,820.40, which amount was then credited to defendant's account. There is no evidence in the record as to what agreement concerning the $25,130 was made between Farns and plaintiff; which accounts were covered by the $17,820.40 payment to plaintiff; or that defendant knew of or agreed to the arrangement. To the contrary, defendant claimed that he was entitled to full credit for the $25,130 received by Farns instead of the $17,820.40 paid over by Farns to plaintiff. After plaintiff rested, defendant moved to dismiss the complaint.

The trial court found that: there was no evidence to support the contention that the Department failed to pay any of defendant's accounts; the fact that plaintiff did not receive the money from the Department did not mean that warrants were not issued in satisfaction of the accounts; the warrants in question, having been issued by the Department and directed to plaintiff's post office box, may have been wrongfully taken by a third

---

[1]Referred to by the parties as Farnsworth; however, its endorsements on the warrants read Farns.

party; and defendant could not be held responsible for any misdirection of the funds represented by the warrants.

Plaintiff first contends that once the promissory notes were received in evidence, with execution and delivery admitted, its burden of proof was fulfilled by simply introducing the ledger sheets showing an unpaid balance on the notes of $9,743.85, unless a defense was established by defendant. Plaintiff relies upon section 3—307(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 3—307(2); *Telpner v. Hogan* (1974), 17 Ill. App. 3d 152, 157, 308 N.E.2d 7, and *Steven v. Falese Land Co.* (1977), 50 Ill. App. 3d 231, 245, 365 N.E.2d 967) for this proposition. The record shows no such theory pleaded in plaintiff's complaint nor pursued on trial. Nevertheless, even had plaintiff done so, it overlooks the countervailing evidence presented by defendant at trial to the effect that plaintiff's general journal entries contained a number of errors and were contradictory as to the amount due and owing on the notes, including individual patient accounts receivable submitted by defendant to plaintiff for which plaintiff had failed to account. Presumably the trial court could have taken this evidence into consideration in arriving at his conclusion.

Plaintiff stresses that the ownership of the accounts receivable and their proceeds was at all relevant times vested in defendant, plaintiff's claim upon them being in the nature of a security interest only. Relying upon subsection (2) of section 9—504 of the Uniform Commercial Code, plaintiff avers that defendant is liable for any deficiency in the security interest as against his corresponding indebtedness to plaintiff upon the promissory notes. This subsection provides, *inter alia,* that (Ill. Rev. Stat. 1975, ch. 26, par. 9—504(2)):

> "If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency."

Considered in isolation from the rest of section 9—504 and the Illinois and Uniform Commercial Code commentary thereon, this language might apply to the facts before us as plaintiff contends. But the "deficiency" referred to in the quotation hereinabove appears to have direct reference to the disposition of collateral provided for in subsection (1) of this section, reading in pertinent part as follows (Ill. Rev. Stat. 1975, ch. 26, par. 9—504(1)):

> "A secured party after default may sell, lease or otherwise *dispose of any or all of the collateral in its then condition or* following any commercially reasonable preparation or processing."

The Illinois Code Comment on section 9—504 provides that "[t]his

section states the disposition rights of the secured party after default · * * *" (Ill. Ann. Stat., ch. 26, par. 9—504, Illinois Code Comment, at 337 (Smith-Hurd 1974)); in its treatment of the concept of "disposition" as used in this section, the official comment explains that "[s]ubsection (1) does not restrict disposition to sale: the collateral may be *sold, leased, or otherwise disposed of* —subject of course to the general requirement of subsection (2) [*sic*] that all aspects of the disposition be 'commercially reasonable'." (Emphasis added.) (Ill. Ann. Stat., ch. 26, par. 9—504, Uniform Commercial Code Comment, at 344 (Smith-Hurd 1974).) It should also be noted that the caption to section 9—504, part of the statute under section 1—109 of the Code (Ill. Rev. Stat. 1975, ch. 26, par. 1—109), reads thus: "Secured Party's Right to Dispose of Collateral After Default; Effect of Disposition." Ill. Rev. Stat. 1975, ch. 26, par. 9—504.

■■ Construed in conjunction with the aforegoing language and comment, section 9—504 in its entirety is evidently intended to apply to some disposition of the collateral at the direction or with the agreement of the secured party, and only upon default by the debtor. In the case at bar defendant was not in default at the time plaintiff accepted the $17,820.40 payment from Farns, nor does plaintiff appear to have conducted or acquiesced in a disposition of the warrants through a transfer to Farns within the meaning of section 9—504. To the contrary, the record shows plaintiff maintained that the warrants came into the possession of Farns without its knowledge or consent. Under these facts, plaintiff's reliance upon section 9—504 is misplaced.

Apropos the requirement of this section that disposition be "commercially reasonable," the record before us contains no evidence that plaintiff ever informed defendant that warrants issued to his name, and which by plaintiff's own account were his property, had been wrongfully diverted to and cashed by Farns. Plaintiff's failure to notify defendant of Farns' action rendered defendant unable to make timely protest to the State by way of the Department for its payment on Farns' endorsement, or to take timely action against Farns to recover the warrants or their proceeds. In the instance of a failure of notice as required under article 9 of the Code, section 507(1) provides the party entitled to notice with "* * * a right to recover from the secured party any loss caused by a failure to comply [with notice requirements]," where disposition of the proceeds has already been effected. (Ill. Rev. Stat. 1975, ch. 26, par. 9—507(1).) Accordingly, even if plaintiff invoked section 9—504 of the Code against defendant for a deficiency in the collateral, he cannot be said to have complied with the requirements of the same section in its disposition so as to entitle him to reimbursement.

■ The result we reach is the same arrived at by the trial court, but is

predicated upon a different reason, a well-established procedure for affirmance on review. *Hall v. Humphrey-Lake Corp.* (1975), 29 Ill. App. 3d 956, 962, 331 N.E.2d 365; *Board of Education v. Schmidt* (1978), 64 Ill. App. 3d 513, 517, 381 N.E.2d 400.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.

