WILLIAM R. EDWARDS *et al.*, Plaintiffs-Appellees, *v.* ZONING BOARD OF APPEALS FOR THE CITY OF QUINCY *et al.*, Defendants-Appellants.— (FRANK WELLS *et al.*, Intervening Defendants.)

Fourth District   Nos. 16575, 16584 cons.

Opinion filed April 24, 1981.—Rehearing denied June 1, 1981.

CRAVEN, J., specially concurring.
TRAPP, P. J., dissenting.

Donald G. Adams, Corporation Counsel, of Quincy, for appellant City of Quincy.

456

Walker & Williams, P. C., of Belleville (James C. Cook, of counsel), for intervening appellants.

David C. Little, of Quincy, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

This case involves the request of plaintiffs, William R. and Verlee A. Edwards, for issuance of a building permit for construction work upon a lot owned by them in Quincy. Defendants, Zoning Board of Appeals for the City of Quincy (Board) and City of Quincy (City), and intervening defendants, Frank Wells *et al.*, appeal the judgment of the circuit court of Adams County entered July 24, 1980, reversing the Board's denial of plaintiffs' request and remanding the case to the Board with directions that it issue the permit.

The basic facts are undisputed. Plaintiffs purchased a lot with a building located thereon at 520 South 21st Street in Quincy (Tract I) and an adjoining lot behind it which did not border on a street (Tract II). Both lots were bordered on the side by an alley which extended from 21st Street. For many years the lots had been zoned R1B (Single Family Residential). However, at the time of the zoning, the house on Tract I had been used as a bakery and subsequently as a beauty parlor. It was, thus, devoted to a nonconforming use within the meaning of the city zoning ordinance. The contract by which plaintiffs purchased was conditioned upon their being permitted to perform remodeling to make the house into a tavern-restaurant, but plaintiffs completed the purchase before obtaining the permit. Apparently they felt that they had assurance that the work could be done, but no conduct of City officials is relied upon on appeal to support the circuit court's reversal of the Board's ruling.

Plaintiffs applied for the permit on June 19, 1979. On June 26, 1979, the building inspector for the City denied the permit by letter and on July 2, 1979, appeal was taken to the Board. On August 15, 1979, the Board made a ruling finding that the permit should be denied and recommending to the City Council that the permit be denied. On September 10, 1979, the latter group concurred in the Board's recommendation. On September 19, 1979, plaintiffs filed the complaint for administrative review in the circuit court. On February 6, 1980, the circuit court remanded the case to the Board for further finding of facts. Those findings were made and certified to the circuit court on February 22, 1980.

The substance of the Board findings were (1) the changes to be made by plaintiffs would result in "structural alterations" and would not result in a use of the premises within "the same or a higher classification," and (2) the proposed improvement would amount to an "enlargement * * *

an extension * * * and an alteration of a nonconforming use" all as prohibited by the city zoning ordinance.

At all times pertinent, section 29.205 of the City Code of the City of Quincy provided in part:

"Nonconforming uses may be continued and if there are no structural alterations, such a use may be changed to a use of the same or of a higher classification. If it is changed from a use in a higher classification to a conforming use it cannot be changed back to the original nonconforming use. For the purposes of this paragraph the 'same classification' means use in a district higher on the list of districts in Subparagraph (2) of Section 29.102.

If a nonconforming use is stopped for one year or more, it then must conform to the use regulations.

A nonconforming use cannot be enlarged, extended, reconstructed or structurally altered unless changed to a permitted use."

Similarly, section 29.102 stated:

"1. The city and the contiguous unincorporated territory within one and one-half miles of the Quincy corporate limits are divided into five types of districts:

RU Districts—Rural
RE Districts—Resort
R Districts—Residential
C Districts—Commercial
M Districts—Industrial

2. The five types of districts are further divided into the following specific districts:

RU1—Rural District
RE1—Resort District
RS—Single-Family District
R1A—Single-Family District
R1B—Single-Family District
R2—Two-Family District
R3—Multi-Family District
C1—Local Commercial District
C2—Commercial District
C3—Planned Commercial District
C4—Central Business District
M1—Light Industrial District
M2—Heavy Industrial District
M3—Planned Industrial District."

One contention of the various defendants arises from confusion in section 29.205. Taken literally, the section states that a permitted change

to a use of the "same or of a higher classification" is a change to a use permissible in a district "higher on the list of districts in Subparagraph (2) of Section 29.102." As the proposed use as a tavern was not a use higher on the aforesaid list than the Local Commercial District classification of the beauty parlor or bakery, those defendants maintain that the proposed use was prohibited. If the section is interpreted in this manner, this alone would have justified the denial of the building permit.

■■ However, we take judicial notice that prior to an amendment to section 29.205 in 1971, the last sentence of the first quoted paragraph of the section stated:

"For purpose of this paragraph the 'same classification' *means uses permitted in the same district; a 'higher classification'* means use in a district higher on the list of districts in Subparagraph (2) of Section 29.102." (Emphasis added; emphasized portions represent words deleted from 1971 ordinance.)

As presently stated, the section does not make sense. We conclude that the deleted language was omitted by oversight at the time of the amendment and interpret the section as if it included the deleted language. (*Carey v. Elrod* (1971), 49 Ill. 2d 464, 275 N.E.2d 367.) Under this interpretation a change from a use as a bakery or beauty parlor to a tavern-restaurant would not be prohibited *per se.*

■■ The major thrust of the argument in support of the Board's determination is that the proposed change in use from that of a beauty parlor with a few chairs or a bakery to a tavern-restaurant accommodating as many as 75 people and requiring use of a large portion of Tract I for parking would constitute an enlargement or extension of the use in a manner prohibited by the last quoted paragraph of section 29.205. We agree that the Board could have properly so found.

If the first-quoted paragraph of section 29.205 were the only provision of the section restricting the preservation of the nonconforming use status of the property, plaintiffs would have been entitled to use the tract for any purpose permitted in a Local Commercial District, unless the proposed changes involved structural alterations of the building on Tract I. (*Orsolini v. Zoning Board of Appeals* (1978), 58 Ill. App. 3d 435, 374 N.E.2d 776.) A tavern-restaurant would have been such a use. However, were a zoning ordinance provided that " '[a] nonconforming use of land shall not be extended' " and the business conducted on a property with nonconforming use status changed from a "small landscaping operation * * * to [a] substantial paving business" the appellate court held it had lost its nonconforming use status as a matter of law although the new use was in the same "general category" as the old. (*Village of Burr Ridge v. Elia* (1978), 65 Ill. App. 3d 827, 830, 382 N.E.2d 876, 878.) In *Dube v. City*

*of Chicago* (1955), 7 Ill. 2d 313, 131 N.E.2d 9, the supreme court held property to have no longer been a legal nonconforming use when a more intensive use of the property was made although both uses were of the same classification but, as explained in *Orsolini*, the Chicago ordinance then involved prohibited substituting one use for another.

We consider the ordinance here to be more similar to that in *Village of Burr Ridge*. The last quoted paragraph of section 29.205 must have been intended as restrictions upon the operation of nonconforming uses in addition to those in the first quoted paragraph of the section. We interpret the restriction against enlargement and extension of the use to prohibit a substantially larger scale of operation upon the premises even though the operations are of a local commercial nature. This was a question of law for us to determine. The Board's determination, inherent in its findings, that a substantially larger operation was contemplated, was not contrary to the manifest weight of the evidence. *Nestle Co. v. Johnson* (1979), 68 Ill. App. 3d 17, 385 N.E.2d 793.

The claim that plaintiffs' proposed remodeling involved structural alterations prohibited by section 29.205 arose from plaintiffs' plans to sever several floor joists in order to build a stairway. Plaintiffs indicated at oral argument that if the proposed building of the stairway was held to be a valid reason for denial of the building permit, they could amend their plans to eliminate any severing of floor joists. Because of our holding that other valid grounds existed for denial of the building permit, we need not address this issue.

As this case involves the issuance of a building permit concerning work to be done on Tract I, the question of the permissible use of Tract II was not before us.

The circuit court judgment reversing the Board's denial of plaintiffs' requested building permit is reversed.

Reversed.

Mr. JUSTICE CRAVEN, specially concurring:

In addition to the rationale of the majority, two other reasons compel reversal of the circuit court.

First, I address the argument that plaintiffs' proposed remodeling involved structural alterations which were prohibited by section 29.205. Section 29.101(11) of the municipal ordinance provides:

> "Structural Alteration means any change in the supporting members of a building, such as bearing walls or partitions, columns, beams or girders, or any complete rebuilding of the roof or the exterior walls, other than a change in doors or windows or a minor

alteration which affects primarily the appearance and not the life of the structure."

The testimony at the hearing before the Board of Appeals, as well as plaintiffs' architectural drawings illustrating the proposed remodeling changes, reveal plaintiffs intended to alter the traffic into the building by moving the main entrance from the front of the building to an existing doorway opening onto the gravel parking lot at the rear of Tract I. Installation of this new entrance would require reworking the existing door frame. An additional stairway would be constructed to the lower level. At oral argument, plaintiffs conceded the obvious proposition that installation of the stairway would necessitate cutting the floor joists and altering the placement of supporting beams. Among the findings of fact filed by the Zoning Board of Appeals with the circuit court was the finding that the proposed remodeling "would constitute a structural alteration of a nonconforming use in violation of section 29.205 * * *."

Section 11 of the Administrative Review Act (made applicable through Ill. Rev. Stat. 1979, ch. 24, par. 11—13—13) provides that the findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct. (Ill. Rev. Stat. 1979, ch. 110, par. 274.) "The court cannot reweigh the evidence but is limited to a determination of whether the final decision of the agency is just and reasonable in light of the evidence. [Citations.] For an administrative decision to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly evident." *Pryka v. Board of Fire & Police Commissioners* (1978), 67 Ill. App. 3d 210, 213-14, 384 N.E.2d 784, 787.

It is not clearly evident that the proposed alterations did not constitute structural alterations within the meaning of the ordinance. Therefore, the circuit court should have affirmed the Board.

Furthermore, the testimony at the hearing provided a sufficient basis for the Board to conclude that the nonconforming use existing at the time the original nonconforming use ordinance was passed had been "stopped for one year or more" and therefore was required to "conform to the use regulations." (Section 29.205 of the City Code of the City of Quincy.) The Board did not indicate in its findings of fact that cessation of use was a basis for its denial of the permit. Nonetheless, although the court may reverse for only the reason specified below, it can affirm for any reason if supported by the record. *Medi-Fi Two, Inc. v. Riordan* (1979), 71 Ill. App. 3d 491, 390 N.E.2d 1.

The testimony at the hearing revealed that the building bought by plaintiffs was vacant in 1961 and 1962 because of illness of the owners. Its use was subsequently changed from that of a bakery, to another ap-

parently nonconforming use, and then to that of a beauty shop. Although the property continued as a nonconforming use after the 1961 and 1962 nonuse, mere nonaction by a municipality is insufficient to invoke the doctrine of estoppel against the city in such a case. See *Village of Burr Ridge v. Elia* (1978), 65 Ill. App. 3d 827, 382 N.E.2d 876.

The record could have supported a finding by the Board that the nonconforming use had been stopped for one year or more, and, therefore, under the standard of review noted above, the Board's denial of the building permit should have been affirmed.

Mr. PRESIDING JUSTICE TRAPP, dissenting:

The majority opinion reverses the trial court upon a determination that there was a more intense use arising from a transition of use as a beauty parlor to use as a restaurant and tavern. Upon oral argument, counsel advised that before the Board of Appeals the measure of use was that of the premises as a bakery. The latter use, whether retail or wholesale, would appear to be of the same use intensity as that of a restaurant.

The majority opinion finds it unnecessary to consider the issue of structural alterations. The special concurrence concludes that there was a structural alteration. Alteration of doors and windows is expressly excepted from that portion of the ordinance. The evidence shows no enlargement of area or change of walls or roof. I would affirm the finding of the trial court.