DOWNES SWIMMING POOL, INC., Plaintiff-Appellant, *v.* NORTH SHORE
NATIONAL BANK, Trustee, *et al.*, Defendants-Appellees.

First District (5th Division) No. 83—1634

Opinion filed May 18, 1984.

Emalfarb & Goble, of Northbrook (Roger C. Goble, of counsel), for appel-
lant.

Selwyn Zun, Robert W. Gettleman, and James A. Geocaris, all of Chicago
(D'Ancona & Pflaum, of counsel), for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff appeals from a judgment for defendant J. Roderick Mac-

Arthur (MacArthur) on his counterclaim for the cost of completing and repairing a swimming pool partly constructed by it, contending that (a) having breached the contract by wrongfully terminating it, MacArthur was not entitled to a setoff for the cost of completing the pool; and (b) the trial court erred in awarding damages for breach of warranty where the express warranty relied upon was conditioned on payment in full of the amount due under the contract.

On November 22, 1978, plaintiff and MacArthur entered into a contract for the construction of a swimming pool at MacArthur's residence for $29,749, the estimated construction period to be "20 to 25 working days and in no event later than 10 days beyond completion of enclosure." The parties eventually agreed upon a June 8, 1979, completion date, but the construction was still incomplete on October 1, 1979, when MacArthur informed plaintiff that it was to cease work on the project, that he would hire others to complete it, and that the cost thereof would be charged against any balance due plaintiff. At that time, MacArthur had made payments totalling $29,566.62. Plaintiff billed MacArthur for the balance due under the contract and for alleged extras, deducting from the bill credits for work which it had not completed. When no further payments were made, plaintiff commenced the instant action seeking foreclosure of its mechanic's lien or, in the alternative, recovery on the contract. In their answer, defendants asserted that plaintiff had breached the contract and was therefore not entitled to any recovery, and MacArthur counterclaimed for the cost of completing the pool and for damages allegedly caused by plaintiff's defective materials and workmanship.

At trial, witnesses for plaintiff testified that construction began in November 1978, with excavation of the site and installation of a concrete shell, but it was understood that no work could be done during the winter months, and that construction would resume in the spring. According to those witnesses, it was originally planned that the pool would be enclosed, necessitating coordination of plaintiff's work with that of the contractors hired to build the enclosure. However, on April 18, 1979, plaintiff was notified that MacArthur had decided not to enclose the pool, and his architect, Thomas Hickey (Hickey), requested that construction resume immediately, since MacArthur wanted the pool ready for use that summer. It was explained to MacArthur that plaintiff's work had been scheduled with the understanding that the pool would be enclosed, that its workers were then occupied with other scheduled work, and that, while they would return to MacArthur's project as soon as possible, it was doubtful that work thereon could recommence until sometime in May. On May 4, 1979, plaintiff's

representative met with MacArthur and Hickey, and it was agreed that plaintiff would complete the work by June 8, 1979, provided that other contractors were on schedule with their work. At that time, the only work remaining to be done by plaintiff was installation of tiles on the floor and sides of the pool, plastering, placement of the pool equipment, and testing of the system.

Plaintiff's witnesses also testified that further delays which were beyond plaintiff's control prevented completion of the project by June 8. The contractor hired by Hickey to do the concrete deck work around the pool did not complete its work until the first or second week of July, preventing plaintiff from plastering the pool until the middle of that month. Early in June, MacArthur decided to add a spa, and the equipment therefor was ordered but could not be placed until sometime in August when MacArthur and Hickey finally decided where the spa and pool equipment would be housed. After numerous changes, an equipment room was completed in August, and by the end of August all of the pool equipment was installed therein, but it was impossible to make the final connections because the necessary utility lines, which were to be installed by another contractor, were not yet in place. In September, the spa was completed, and all that remained was installation of a pool cover and testing of the system when plaintiff was notified by Hickey that MacArthur was terminating the contract and intended to hire others to complete it. MacArthur was billed for the work done, including extras not covered by the written contract, and credits were given for the work not done; *i.e.*, installation of the pool cover, some incomplete electrical work, and installation of a valve. MacArthur refused to pay the bill, and plaintiff was not notified of any problems with the work nor given the opportunity to correct them.

Witnesses for defendants testified that the pool was originally planned as an outdoor pool, and that the reference in the contract to "enclosure" meant the enclosure of the pool equipment, not enclosure of the entire pool. There was some discussion of enclosing the pool in the early months of 1979, but the idea was abandoned when it appeared that the cost would be prohibitive. At a meeting in May, plaintiff's representative was informed that MacArthur wanted the pool completed as quickly as possible, and he was assured that it would be done by June 8; however, the pool was not completed as promised, and plaintiff failed to comply with repeated demands that workers be sent to finish the project. Whenever such a demand was made, workmen would appear for a day or two, then no further work would be done for two or three weeks, until MacArthur or Hickey called and

again insisted that plaintiff return to the jobsite. These witnesses denied that plaintiff's work was delayed by other contractors, by the unavailability of parts and equipment, or by minor changes which MacArthur requested.

Defendants' witnesses further testified that because of plaintiff's repeated delays and failure to comply with demands that it resume work, MacArthur terminated the contract and hired others to complete the work in the spring of 1980. An architect engaged to supervise the completion stated that when he first saw the pool in late January 1980, it was not covered, there was water standing in the deep end of the pool, and the plaster finish was cracked, blistered, and peeling on all four walls. The damage could not be repaired by patching, and it was necessary to chip and sandblast the original plaster and apply a new coat of plaster. Other witnesses testified that the damage to the plaster was the result of improper application thereof to the concrete shell. They explained that plaster should be applied as soon as possible after the gunite shell (a concrete mixture applied by spraying) is in place to ensure a clean undersurface and proper bonding. In their opinion, since the plaster was not applied until more than six months after the concrete was installed, plaintiff should have sandblasted the concrete and applied an acid wash prior to plastering, or should have used a heavy acid wash and applied a bonding agent. Those witnesses also opined that mixing the plaster with dye, which was added to achieve a dark surface, compounded the problem by weakening the bonding of the plaster to the concrete.

Defendants' witnesses acknowledged that if a pool is not properly cared for through the winter months, by keeping it partially filled, cracks can develop as a result of the pressure placed on the concrete shell by the freezing of surrounding ground water. However, they asserted that the damage caused would be a cracking of the concrete shell with matching cracks in the plaster surface. When MacArthur's pool was sandblasted, they discovered that only the plaster was cracked; the concrete shell was in good condition with the exception of a single crack in the floor of the pool at the deep end, an area which had been covered by water during the winter months. Furthermore, there was no difference in the condition of the plaster in areas which had been protected by water and those which had not. These witnesses also testified that it was necessary to make slight changes in the plumbing system designed by plaintiff; to install a different type of filter because the filter provided by plaintiff was inadequate; to reposition the equipment for easier access in servicing; and to provide a safety cover, diving board, missing pool cleaning equipment, a

line to fill the pool, and lights. They also stated that when the equipment provided by plaintiff was tested, it was discovered that plaintiff had crossed some of the water lines, making it necessary to break open the concrete deck to repair them. Finally, when the pool was filled, several leaks appeared and had to be repaired.

In rebuttal, witnesses for plaintiff acknowledged that the gunite shell was not sandblasted prior to plastering, and that plaintiff had not applied a bonding agent. However, they asserted that such measures are necessary only when replastering an old pool, and offered the opinion that the damage to the plaster in the instant case was the result of MacArthur's failure to properly winterize the pool by keeping it partially filled and covered.

The trial court found that plaintiff's failure to complete the project by June 8, 1979, was excused by delays beyond its control in the work of another contractor as well as by the numerous changes in plan occasioned by MacArthur and Hickey, some of which occurred as late as August 23, 1979. It further found that plaintiff had provided labor and materials, including extras, having a net value of $39,509.40, resulting in an unpaid balance due of $9,942.78. With regard to MacArthur's counterclaim, the trial court found that various items required by the contract were not completed, and that the defective plaster, the leaks, and other problems with the system were covered by an express warranty, which provided in relevant part:

> "The pool structure is guaranteed against cracks which may cause leaks for a period of five years from the date of completion. The Contractor warrants other work performed under this agreement to be free from defects in material and workmanship for a period of one year from the date of completion. *** The Contractor also is not responsible for damage resulting from improper operation of the equipment, lack of care of the equipment, or improper winterizing of the pool and equipment. This warranty is contingent upon full payment of the amount required under the agreement."

The trial court therefore allowed the following items as a setoff against the amount due plaintiff for the work performed:

| | |
|---|---|
| Replastering: | $10,399.00 |
| Pool equipment changes: | 2,550.00 |
| Repairing crossed lines: | 1,182.60 |
| Repairing leaks: | 1,006.85 |
| Installing check valve and repairing leaks: | 100.00 |
| Starting boilers and checking system: | 60.00 |
| Total setoff: | $14,228.45 |

Judgment was entered for MacArthur on his counterclaim in the amount of $4,295.67, and this appeal followed.

Opinion

Before reaching the merits of plaintiff's appeal, we must address MacArthur's contention that the issues presented here were waived by plaintiff's failure to raise them before the trial court. He correctly asserts that while an appellee may defend a judgment by any argument and upon any basis appearing in the record, whether or not it was advanced at trial (*Village of Arlington Heights v. National Bank* (1977), 53 Ill. App. 3d 917, 369 N.E.2d 502), and we may affirm a correct decision for any reason appearing in the record, regardless of the basis relied upon by the trial court (*U-Haul Co. v. Town of Cicero* (1980), 87 Ill. App. 3d 915, 410 N.E.2d 286), an appellant may not raise as grounds for reversal on appeal any defense not interposed in its answer before the trial court (*Mendelson v. Lillard* (1980), 83 Ill. App. 3d 1088, 404 N.E.2d 964), even where it appears that the evidence presented would have supported that defense (*Consoer, Townsend & Associates v. Addis* (1962), 37 Ill. App. 2d 105, 185 N.E.2d 97).

Our function in reviewing a trial court's decision is to determine whether it correctly decided the issues before it, and as we have noted, "[t]he issues are determined from the pleadings and the evidence. To have evidence without pleading an issue is just as fatal as pleading an issue and not supporting it with evidence. Both are essential and each must conform to the other." (*Consoer, Townsend & Associates v. Addis* (1962), 37 Ill. App. 2d 105, 110, 185 N.E.2d 97, 99.) Quite simply, a trial court cannot err on an issue which has not been presented to it for decision; for that reason, defenses not raised are waived.

We have carefully examined plaintiff's answer to MacArthur's counterclaim, and note that it admitted therein that certain work and materials were not provided, denied that it left other work unfinished, and denied MacArthur's allegation that its workmanship and materials were defective. The trial court found in MacArthur's favor on these factual questions, and plaintiff does not dispute those findings on appeal. Instead, it now contends only that recovery on the counterclaim was barred by MacArthur's breach of the contract, and that MacArthur could not recover on the express warranty because he failed to pay the full contract amount as required by the terms thereof. These issues, however, were not raised in plaintiff's answer, and we are unable to determine whether they were even argued, since the re-

cord on appeal does not include any of the arguments made by counsel. Under these circumstances, it appears that we would be justified in deeming the issues waived. Nevertheless, we have considered plaintiff's contentions and find them to be without merit, even assuming *arguendo* that MacArthur's conduct in terminating the contract was unjustified.

■ Concerning the first of these contentions, namely, that MacArthur may not bring suit on the contract because he wrongfully repudiated it, plaintiff cites several cases holding that a party which breaches an agreement loses any benefits due it thereunder, and may not recover damages allegedly resulting from the other party's failure to complete the contract. (See, *e.g., Builder's Concrete Co. v. Fred Faubel & Sons, Inc.* (1978), 58 Ill. App. 3d 100, 373 N.E.2d 863; *Robinhorne Construction Corp. v. Snyder* (1969), 113 Ill. App. 2d 288, 251 N.E.2d 641.) Therefore, it posits, having breached the contract, MacArthur could not take advantage of the express warranty therein, nor was he entitled to recover any costs incurred in completing the work, since it had no duty to continue, nor could it have done so, once MacArthur terminated the contract.

If MacArthur's counterclaim for a setoff in the instant case were predicated on a breach of contract theory, we would agree that application of the above rule might bar recovery of the cost of completing the work. However, we find the above cases distinguishable, since the damages sought here were allegedly incurred, not because MacArthur refused to allow plaintiff to finish the project, but because the work actually done was not completed in a good and workmanlike fashion. Thus, the damages were not a result of any breach by MacArthur in terminating the contract prior to completion, and he would not be barred from recovery by the rule that one may not recover damages caused by his wrongful repudiation of a contract. On the other hand, it does appear that MacArthur could not rely on the express warranty contained in the contract, which is "contingent upon full payment of the amount required" under the agreement, since it is undisputed that MacArthur failed to pay almost $10,000 of what would have been due under the agreement. Nevertheless, it is our view that the setoff allowed by the trial court was proper under other theories of law.

In this regard, we initially note that under either count of its complaint, plaintiff was entitled to recover only for the value of work actually done and materials actually provided. The first count, seeking foreclosure of a mechanic's lien, was based on section 4 of "An Act relating to contractors' and material men's liens ***" (Ill. Rev. Stat. 1979, ch. 82, par. 4), which provides that, where the owner of the land

has wrongfully breached the contract, "the contractor shall be entitled to enforce his lien for the value of what has been done, *and the court shall adjust his claim and allow him a lien accordingly.*" (Emphasis added.) Thus, plaintiff was entitled to a lien only for the work which it had performed. (See, *e.g., Contract Builders Service Corp. v. Eland* (1981), 101 Ill. App. 3d 366, 428 N.E.2d 178; *Miller v. Reed* (1973), 13 Ill. App. 3d 1074, 302 N.E.2d 131.) Similarly, under count II of the complaint seeking recovery on the contract, plaintiff was entitled to recover only for the work actually done. The parties' contract provided:

"Contract price: *** $29,749.00 Payable 10% on acceptance, 15% on completion of excavation, 30% on placement of gunite shell, 25% on pouring of deck, balance due on completion, *except in the event of stoppage by the Owner *** Owner shall pay this Contractor on billing for all work then performed and for all material then delivered.*" (Emphasis added.)

The contract also has a liquidated damages provision, which states that "[i]n the event Owner(s) shall in any respect fail to perform the terms or prevent the performance of this contract, he (they) shall there upon be liable to the Contractor in the amount of any out-of-pocket expenses theretofore paid or incurred by the Contractor in reliance upon this agreement as liquidated damages for the Owner['s] *** breach."

■ Plaintiff apparently understood that it was not entitled to recover the full contract price, but only the value of work performed, since it made several deductions in the form of credits for uncompleted work when it presented the final bill to MacArthur for payment, and did not seek to recover therefor in this action. However, in addition to the work for which credits were given, it appears from the evidence, and from plaintiff's admissions in response to the counterclaim, that other work and materials called for in the contract were not provided, and plaintiff made no adjustments therefor in its claim; in effect, it sought to recover for some items of work which it did not do. For example, under the contract, plaintiff was to furnish and install a diving board; to install lights; to furnish various pool maintenance items; to complete installation of the spa; and to start up and test the system. Plaintiff was not entitled to any recovery for these items, since it did not perform them, and further adjustments therefore should have been made by plaintiff in its claim. It did not do so, nor was any testimony presented from which the trial court could determine what portion of the amount sought was attributable to these unperformed items. The only evidence on value presented by plaintiff

was the contract price, which represented the value the pool would have had if completed, not the value of what was actually done. Thus, the trial court had to rely on evidence presented by MacArthur with regard to the cost of completing the work in order to determine what plaintiff was entitled to recover for the work it did do. The setoff was proper, then, not as compensation to MacArthur for having to complete the work, but as an adjustment to plaintiff's claim for the value of the work done, since under either theory that was all it could recover.

■ It is further our view that, contrary to plaintiff's assertions, MacArthur was entitled to a setoff for the cost of repairing defects in the material and workmanship provided by plaintiff, regardless of the applicability of the express warranty contained in the contract. It has been said that "one who contracts to perform construction work impliedly warrants to do the work in a reasonably workmanlike manner" (*Dean v. Rutherford* (1977), 49 Ill. App. 3d 768, 770, 364 N.E.2d 625, 626-27), and that the failure to so perform constitutes a breach of contract (*Mayfield v. Swafford* (1982), 106 Ill. App. 3d 610, 435 N.E.2d 953). Under the common law, literal performance was required in order to sustain recovery on a contract, but that rule has been ameliorated in building and construction cases, with courts now holding that "if the owner got substantially the thing for which he bargained, he must pay for it, but he [is] allowed a credit as compensation for the deficiencies existing in what he got as compared to what strict performance would have given him." (*Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 397, 226 N.E.2d 270, 280.) The same rule has been applied in actions to foreclose a mechanic's lien, allowing the defendant-owner a setoff for the cost of repairing defects in the work done. In *Dean v. Rutherford* (1977), 49 Ill. App. 3d 768, 770, 364 N.E.2d 625, 627, the court noted that "[t]he failure of a contractor to substantially perform the contract in a workmanlike manner entitles the owner against whom a mechanic's lien is sought to a setoff for damages incurred by the failure to perform in a workmanlike manner." Similarly, in *J-M Builders & Supplies Corp. v. McIntyre* (1978), 56 Ill. App. 3d 714, 372 N.E.2d 420, the court found that the contractor had substantially performed and was entitled to a mechanic's lien, but allowed the plaintiff a setoff for the cost of correcting defects, stating that it "[had] examined the authorities cited *** and [found] no authority for the contention that a finding of substantial performance on the part of a builder precludes the giving of a credit for repairing defects. Just the opposite is the case in Illinois." (56 Ill. App. 3d 714, 715, 372 N.E.2d 420, 421.) Moreover, at least one

court has allowed recovery, not merely as a setoff to the contractor's suit for a mechanic's lien or breach of contract, but on an original action by the owner predicated on breach of an implied warranty of performance in a workmanlike manner. See *Mayfield v. Swafford* (1982), 106 Ill. App. 3d 610, 435 N.E.2d 953.

Here, plaintiff does not dispute the trial court's finding that the defects in question were the result of poor workmanship or materials, and it is apparent from the above-cited cases that even if MacArthur could not rely on the express warranty contained in the contract, allowance of a setoff for the cost of repairing defects was proper, either under the doctrine of substantial performance, or on the theory that plaintiff had breached its implied warranty of good workmanship. We further note that it was this theory, not the express warranty, which was the basis for MacArthur's counterclaim, and regardless of the reasoning employed, the trial court's decision was proper and therefore will not be disturbed.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and WILSON,* JJ., concur.

*This opinion was adopted as the opinion of the court prior to the death of Mr. Justice Wilson.